BYRAM v. PAYNE, Agent.

No. 3627. Decided August 30, 1921. (201 Pac. 401.)

1. CARRIERS—EVIDENCE HELD TO SUPPORT SHIPPER'S ALLEGATION THAT SHEEP DIED FROM ALKALINE WATER FURNISHED BY CARRIER. In an action for death of part of a shipment of sheep evidence that the sheep were allowed by the carrier to drink alkaline water, that such water often kills sheep, and that they died from drinking it, *held* to constitute prima facie proof of the complaint, as against motion for nonsuit.

2. CARRIERS—CARRIER FURNISHING UNWHOLESOME WATER TO SHEEP CARRIED LIABLE. Where the carrier undertakes to rest and water sheep carried under an interstate shipment, as required by the federal law, it must furnish wholesome water, and if it does not, and the sheep die from drinking unwholesome water, the carrier is liable.

3. CARRIERS—WANT OF KNOWLEDGE NO DEFENSE FOR FURNISHING

UNWHOLESOME WATER TO SHEEP CARRIED. Where sheep carried in an interstate shipment died from drinking alkaline water furnished by the carrier, it was no defense, in an action against the carrier that it had no knowledge that the water was unwholesome; it being the carrier's duty, under federal law, to furnish wholesome water.

4. CARRIERS—VALUE OF SHEEP DYING EN ROUTE SUFFICIENTLY SHOWN AS AGAINST MOTION FOR NONSUIT. In a shipper's action for damages for sheep killed during transportation by drinking poisonous water, the value of the sheep *held* sufficiently proven, as against motion for a nonsuit, although testimony of value at an intermediate point merely and not at destination, was given (citing *Dee* v. *San Pedro, L. A. & S. L. R. Co.*, 50 Utah, 167, 167 Pac. 246).

5. CARRIERS—MEASURE OF DAMAGES FOR SHEEP DYING DURING SHIPMENT IS MARKET VALUE AT DESTINATION. Where part of a shipment of sheep died from drinking poisonous water furnished by the carrier en route, the measure of damages was the market value at destination.

6. APPEAL AND ERROR—APPELLATE COURT WILL NOT WEIGH EVIDENCE. The weight of testimony, including that of expert witnesses, is wholly a subject for the jury's determination, and it is not within the province of an appellate court to pass on the evidence and say that the opinion of the jury was wrong.

7. CARRIERS—BURDEN ON SHIPPER TO PROVE CARRIER'S NEGLIGENCE. In a shipper's action for the death of sheep from drinking poisonous water furnished by the carrier, the burden was on plaintiff to show defendant's negligence.

8. CARRIERS—EVIDENCE HELD TO SHOW CARRIER HAD CONSTRUCTIVE NOTICE THAT WATER FURNISHED SHEEP WAS UNWHOLESOME. In a shipper's action for the loss of sheep through drinking alkaline water furnished by the carrier, evidence *held* to show that the condition of the water had existed so long that notice of its unwholesomeness was imputed to the carrier.

9. CARRIERS—SHIPPING CONTRACT INADMISSIBLE UNDER PLEADINGS TO SHOW SHIPPER'S CONTRIBUTORY NEGLIGENCE. In a shipper's action for the loss of sheep through drinking unwholesome water in a yard furnished by defendant, it was not error to exclude the shipping contract to show that the shipper himself undertook to unload the sheep and that he was guilty of contributory negligence; no such defense nor any special contract having been pleaded.

10. APPEAL AND ERROR—RULING EXCLUDING EVIDENCE NOT EXCEPTED
TO NOT REVERSIBLE ERROR. A ruling excluding evidence is not
reversible error where no exception was taken thereto.

Appeal from District Court, Second District, Weber County; *A. W. Agee,* Judge.

Action by Robert Byram against John Barton Payne, as Agent, under the federal Transportation Act of 1920 (41 Stat. 456), of the Union Pacific Railroad Company. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Geo. H. Smith, Jno. V. Lyle,* and *C. B. Diehl,* all of Salt Lake City, and *Charles R. Hollingsworth,* of Ogden, for appellant.

*John G. Willis,* of Ogden, for respondent.

WEBER, J.

Defendant, the Director General of Railroads, appeals from a judgment in favor of plaintiff on two causes of action.

At Huntsville, Utah, on September 6, 1919, plaintiff delivered to defendant, for transportation to Omaha, Neb., seven carloads of sheep, and Fred J. Cobabe delivered three carloads of sheep for the same purpose. The ten cars were shipped together. Two hundred and thirty of plaintiff's sheep and 135 of Cobabe's died at North Platte, Neb. Cobabe's claim was assigned to plaintiff before this action was brought.

In the first cause of action the allegations of negligence are that plaintiff's sheep were negligently unloaded by defendant from the cars upon which they were being transported into the yards at the station at North Platte, Neb., which yards contained water unwholesome and poisonous and dangerous to the life of sheep if partaken of by them, and of

which said water the defendant negligently permitted said
sheep to drink, from the effects of which they died; and at
the time the sheep were placed in the yards by defendant he
knew, or by the exercise of ordinary care might have known,
that the yards contained large quantities of said water and
that the sheep were likely to drink of the same and be thereby
poisoned. The same allegations of negligence were contained
in the second count of the complaint.

The answer denied these allegations of negligence and
averred a separate and distinct affirmative defense to each
cause of action, to the effect that whatever, if any, damage
was done to the shipment of sheep was caused not by any
negligent act of commission or omission on the part of de-
fendant, but by the inherent nature and disposition of said
sheep themselves, or by sickness, or disease, or condition ex-
isting in said sheep, over which sickness, disease, and con-
dition defendant had no control and of which he had no
knowledge.

When plaintiff had completed the presentation of testi-
mony, defendant moved for a nonsuit upon the grounds that
there was no evidence that the sheep died from drinking poi-
sonous or unwholesome water; that there was a complete ab-
sence of testimony to show that the defendant knew at the
time the water to be poisonous, or any testimony to show that
by the exercise of ordinary care the defendant might have
known that the water was poisonous or unwholesome; and
that there was no evidence of the market value of the sheep
at Omaha, the destination of the shipment. The motion for
nonsuit was denied, and the ruling is assigned as error.

The substance of plaintiff's testimony was that the sheep
had been driven from their mountain range, about 35 miles
from Huntsville, Utah, eating grass and drinking pure moun-
tain water on the way; that the shipment of sheep arrived
at North Platte at 1:35 p. m., September 9, 1919, and was
unloaded between 5 and 6 o'clock of that day; and that the
sheep were then driven into a pasture containing a slough of
stagnant water which was testified to as being alkaline. The
plaintiff and his assignor were experienced sheep men. They

had frequently observed sheep die from drinking alkaline water. They testified that the water which the sheep drank was alkaline and that its drainage was from alkaline land. They further testified that sheep, after being "alkalied," stand and tremble; that some die right away, while others live for a few hours or a day or two afterwards; that the actions, conduct, and appearance of the sheep at North Platte, on the morning after they arrived there, were similar to the conduct and appearance of sheep which the witnesses had seen die from alkaline water on other occasions. Except two of the sheep that were apparently trampled to death, none of them died before reaching North Platte, and none of them died after leaving that station.

Plaintiff and Mr. Cobabe, plaintiff's assignor, accompanied the sheep. Not having been notified that the sheep would be unloaded at North Platte, they remained on the train and were carried a mile or so beyond North Platte when the train was stopped, and they walked back to the stockyards. Upon their arrival at the stockyards, the sheep were being unloaded and 300 or 400 of them were drinking the water in the pasture into which they were being driven. The pasture was described by plaintiff as "a kind of salt grass and alkali field," and was one of the feeding places provided there and covered about 80 acres. The shipment of sheep consisted of lambs, yearlings, two-year olds, and some ewes probably six years old.

After qualifying as a witness as to the market value of the sheep, the plaintiff testified that the 235 head of his sheep which died at North Platte were worth $7.40 per head "right here in Morgan." Plaintiff's assignor, who was also a qualified witness on the subject, testified that he estimated the Byram sheep at $7.40 per head. He himself lost 135 sheep which he said were worth $5.90 per head, the difference in value being because the Byram sheep were in better condition than those owned by the witness.

The defendant claims that the testimony was insufficient to constitute prima facie proof of the averments of plaintiff's complaint. True, plaintiff's evidence is not strong. However, some substantial evidence was produced          1

showing that the water was alkaline, that such water injures and often kills sheep, and that the sheep, which were presumably in good condition and apparently free from disease when delivered to the defendant, died from the effects of drinking water furnished by defendant.

This was an interstate shipment. The federal law provides that when animals are unloaded they "shall be properly fed and watered during such rest either by the owner or person having the custody thereof, or in case of his default in so doing, then by the railroad  *  *  * company." Comp. St. § 8652. It is the duty of the carrier to provide reasonable facilities for feeding, watering, and resting stock during transit, and "where the carrier undertakes to feed and water stock, notwithstanding a contract imposing this duty on the shipper, it is bound to exercise due care to see that the stock are given suitable food and water." 10 C. J. **2** p. 26, § 108. It being the carrier's duty to furnish water, it must furnish wholesome, not poisonous, water. And if it furnishes water that is unwholesome, and sheep drink of it and die from the effects of drinking such water, the carrier is liable. Thus it has been held that—

"If the carrier permits salt water to stand in pens accessible to lambs offered for shipment, it is guilty of negligence and liable for loss occasioned thereby." 10 C. J. p. 80, § 82, citing cases.

It is argued that before defendant could be held liable proof of notice to him or knowledge by him of the condition of the water must be adduced. The fact that a slough existed in the pasture in which there was stagnant water, the color and appearance thereof, together with the alkaline character of the surrounding land, constituted some notice to defendant of the unwholesome condition of the water if notice was necessary to make defendant liable. However, it was defendant's duty to furnish suitable food and whole-     **3** some water. If a common carrier furnishes unwholesome and poisonous water to stock that is being transported by it, it is no defense to say that he did not know the water was unwholesome or poisonous. It is the carrier's duty to

know, and if poisonous food or water is furnished the carrier furnishes it at his peril.

The evidence of value of the sheep was definite and exact— $7.40 per head for some of the sheep and $5.90 per head for others. Byram testified that his sheep were worth $7.40 per head "right here in Morgan," a station on the Union Pacific railroad a few miles east of Ogden; the latter being the nearest railroad station to Huntsville, the initial point of shipment. Plaintiff was entitled to recover the market value of the sheep at Omaha, Neb., the point of destination. Presumably the market value was higher at Omaha than at Huntsville, Ogden, or Morgan, Utah, or North Platte, Neb. The value at Huntsville, plus the freight which had been paid, would ordinarily be the market value at Omaha. The market fluctuations might make a decided difference one way or the other. The witnesses were shown to be competent. They had sold their sheep on the Omaha market. They were in the sheep business, and were fully qualified to testify as to the market value in Utah and as to the market value in Omaha. On cross-examination no questions were asked of the witnesses regarding the subject of value. Both parties seemed to be satisfied with the proof.

In *Dee* v. *San Pedro, L. A. & S. L. R. R. Co.*, 50 Utah, 167, 167 Pac. 246, one of the questions involved was as to the value of horses at Salt Lake City. There was no direct proof at all of the value in Salt Lake City, the place where the value of the horses ought to have been shown. It was shown, however, that the horses were purchased at Pocatello for $125 each, then shipped via Salt Lake City to Los Angeles, the higher market. They were rebilled at Salt Lake City. Referring to the question of value in the Dee Case, at page 179 of the Utah report (167 Pac. 250), Mr. Justice Thurman announces the rule which is applicable here as being:

"The presumption is almost conclusive that the horses were worth more in Salt Lake City than in Pocatello, because they were nearer the better market."

Plaintiff established the value of the sheep at Morgan, east of Ogden. Presumably the sheep would have been worth more at North Platte, and still more at Omaha.

The defendant therefore could not have been prejudiced by proof of value at Huntsville, Ogden, or Morgan, at least in the absence of any evidence rebutting the presumption they were worth more at Omaha.

Considering all of the testimony produced by plaintiff in the light most favorable to him, it was sufficient to justify the court in denying the motion for nonsuit.

After both parties had rested, the defendant moved for a directed verdict in his favor. The denial of this motion by the court is assigned as error.

On the part of the defendant evidence contradicting that of plaintiff was introduced. The plaintiff was corroborated by the testimony of one of the defendant's witnesses as to the claim of the alkaline nature of the land about North Platte. Evidence was adduced tending to establish the affirmative defense that the sheep died from disease. A veterinarian of North Platte who examined the sheep testified that in his opinion they died from hemorrhagic septicæmia. Ears were cut from some of the sheep that died and sent to a prominent veterinarian at Kansas City, who made a microscopical examination of blood from each ear sent him. Other tests were made by this veterinarian, and from all of them he concluded that the sheep had died from hemorrhagic septicæmia. He said that he found ''the presence of a gram of negative bipolar nonmotile hemorrhagic septicæmia which fulfills the characteristics of the hemorrhagic septicæmia bacterium.'' How any of the sheep survived is a mystery that ''passeth all understanding.'' From the verdict it is apparent that to the jury this exposé was confusing rather than informatory, obfuscating rather than illuminating. Counsel, however, contend that the expert testimony should have **6** been accepted by the jury as conclusive. Possibly the jury failed to give to the testimony of these expert witnesses the weight to which it was entitled, but the weight of testimony, including that of expert witnesses, is wholly a subject for the jury's determination. Doubtless the defendant presented a strong defense, but it is evident from their verdict that the jurors believed the sheep men and farmers and

doubted or rejected the testimony of the veterinarians and biologists. It is not within the province of an appellate court to pass upon the evidence and say that the opinion of the jury was wrong.

Counsel for defendant say that—

"Under the facts and the law of this case the burden was upon the plaintiff to prove the carrier's negligence, that is, that the sheep drank poisonous and unwholesome water in the stockyards at North Platte, and that such condition of the water was known to the defendant and was the cause of the death of the sheep."

The jury were properly instructed that the burden of proof was upon the plaintiff, and while the plaintiff's testimony does not seem especially convincing, there was some substantial testimony from which it could logically be inferred and concluded, not only that the water was unwholesome or poisonous, but that drinking of it killed the sheep. So far as notice of the condition of the water to defendant is concerned, the evidence adduced by plaintiff in rebuttal, to which no objection was made, was sufficient to prove notice to defendant that sheep drinking from this water frequently died. Mr Marriott, a witness for plaintiff, testified that prior to 1919 he had watered sheep in the pasture connected with the North Platte stockyards and had sheep die from drinking the water. When in 1919 he selected a pasture south of the stockyards in which there was no stagnant water his sheep "did fine." So that, if notice of the condition of the water was necessary to make defendant liable, testimony was produced by plaintiff tending to show that the condition of the water had existed for such length of time that notice of its unwholesome and poisonous character was imputed to defendant.

The request for a directed verdict was therefore properly denied.

When testifying on cross-examination, the plaintiff stated that he had read the contract under which the sheep were transported. Thereupon the defendant offered the shipping contract in evidence for the purpose of showing that the plaintiff himself understood and contracted to unload the sheep. It was claimed that the contract was material because

the witness said in direct examination that the carrier drove the sheep into the pasture. In the language of defendant's counsel:

"We want to show that if these sheep were permitted to rush to that water and it was going to be detrimental to them, I don't care whether it was fresh or poisonous, then plaintiff himself was to blame."

An objection to the introduction of the contract was sustained by the court. This ruling is assigned as error.

Contributory negligence is not pleaded by the defendant. Nor is any contract imposing special conditions pleaded in the answer. No claim is made in defendant's answer that plaintiff failed to perform any duty that devolved upon him. The objection to the introduction of the contract was therefore properly sustained, for the reason that the **9, 10** proposed proof would have been proper only for the purpose of establishing contributory negligence on the part of plaintiff and that he did not care for the sheep as he should have done. Another reason why the ruling would not be reversible error is that no exception was taken to the court's ruling.

An examination of the court's instructions, to which many exceptions were taken by defendant, discloses no material or prejudicial error. Numerous requests to instruct were made by defendant. Those that were correct and that were applicable to the facts were given in substance.

There being no reversible error in the record, the judgment is affirmed.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.