507 P.2d 705

**STATE ROAD COMMISSION, Plaintiff and Appellant,**

v.

**Dennis K. BLACKNER et al., Defendants and Respondents.**

No. 12867.

Supreme Court of Utah.

March 6, 1973.

Vernon B. Romney, Atty. Gen., Stephen C. Ward, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

Glen E. Fuller, Orval C. Harrison, Salt Lake City, for defendants and respondents.

CROCKETT, Justice:

The State Road Commission brought this proceeding to condemn for highway purposes 11.9 acres of land owned by defendants Blackners in the locality of South Weber. In the course of the proceedings, defendants also asserted ownership of five acres additional contiguous land, which the Road Commission had assumed belonged to another owner, and from whom it had acquired a quitclaim deed. The issue as to the title of the disputed five acres was tried to the court. After a plenary trial, it made findings and adjudicated the ownership of the disputed five acres to be in the defendants. A jury trial on the questions of damages resulted in awarding to defendants a total of: $32,930.00, $20,230.00 as compensation for the 11.9 acres; $5,000.00 as compensation for the five-acre parcel; $7,700.00 as severance damages to the remaining lands of defendants. Plaintiff appeals only from court's determination that the defendants were owners of the five-acre parcel.

The Blackners have a farm and make their home in Davis County near the

mouth of Weber Canyon. The deed by which they acquired their property, dated May 20, 1960, described their property as:

> Beginning at the Southeast corner of the Northeast Quarter of the Southeast Quarter of Section 27, Township 5 North, Range 1 West, Salt Lake Meridian, U.S. Survey; and running thence West 80 rods; *thence North to the South line of the Weber River; thence East along the South line of said River to the East line of said Section 27;* thence South 40 rods; more or less to the place of beginning. [Emphasis added.]

The deeds of their predecessors-in-interest over many years similarly described the north boundary. The controversy has risen because of conflicting claims as to the location of the "south line of said river" as it runs along the north boundary of defendants' property. (And it coincidentally forms the boundary between Davis and Weber Counties.) The river flows generally westerly out of Weber Canyon in the Wasatch Mountains, and on to the Great Salt Lake. In the area here in dispute it digresses from its westward course and veers southward and then back northward to form what is referred to as a "gooseneck" as shown in the illustration below.

Defendants' claim to the five-acre area marked "disputed land" is based upon these propositions: That the references in the deed to the "south line" of the Weber River referred to the "old river channel" as it existed prior to 1952; that in that year there was a severe flood which caused the course of the river to change and run around the loop or gooseneck as described above. Consequently, they rely upon the principle, which we recognize as sound, that where there is such an avulsive or sudden and dramatic change in the course of a stream, the riparian owner does not lose his property, but the boundary remains as it existed before such sudden change.[1] The plaintiff has voiced no disagreement with that principle. The matter which is in dispute, and the critical issue in the case, was whether at the time the predecessor deeds were made the course of the river had been along the "old river channel" as labeled in the diagram, or in its present location, around the "gooseneck" as contended by plaintiff.

Concerning the issue just stated, the evidence is in conflict. In support of the contentions of the defendants, in addition to their own testimony, there is the testimony of a Mr. Glen Ray. He is a man 68 years old, a lifetime resident of the South Weber area, who seemed to be well acquainted with the whole situation. He testified that the main channel of the river prior to the 1952 flood was in fact north of the present river channel or gooseneck as shown in the above illustration; that the disputed property within the gooseneck was known by the local residents as "the island"; that he and others used to dam up the river just east of the disputed property in order to divert water southward into the gooseneck where the headgates for their irrigation water were located until the 1952 flood.

In opposition to the above, plaintiff presented testimony by two expert witnesses, which was based on aerial photographs of the disputed property before and after the 1952 flood. They both said that in their opinions, the main channel of the Weber River both prior to and after the 1952 flood coursed around the present gooseneck. Plaintiff also called a local resident whose testimony conflicted in some particulars with that of defendants' witness. It is true that this evidence of the plaintiff considered by itself, if believed by the trial court would amply support its contention: that the course of the river has for many years been around the gooseneck; and that taking this as defendants' north boundary, would exclude the five-acre tract from their property. However, under well established rules of review, the evidence must be looked at in its totality, and upon the assumption that the

1. See Purvine v. Hathaway, 238 Or. 60, 393 P.2d 181 (1964); Hirt v. Entus, 37 Wash.2d 418, 224 P.2d 620 (1950); State v. Bonelli Cattle Co., 107 Ariz. 465, 489 P.2d 699 (1971); City of Long Beach v. Mansell, 3 Cal.3d 462, 91 Cal. Rptr. 23, 476 P.2d 423 (1970); 56 Am. Jur.2d Waters, Sec. 477.

trial court believed those aspects of the evidence most favorable to his findings.[2] In doing so and focusing attention upon the defendants' evidence as just recited above, it can also be said that there is a reasonable basis therein for him to believe, as he found, that prior to the sudden change caused by the 1952 flood the course of the river was along the "old river channel" as shown in the illustration above; and that this formed the north boundary of the defendants' property as described in the deeds. According the judgment the presumptions of validity to which it is entitled, we are not persuaded that it should be upset.[3]

Affirmed. Costs to defendants (respondents).

CALLISTER, C. J., and TUCKETT, J., concur.

ELLETT, Justice (dissenting):

I dissent.

The Blackners own land in Davis County. The five-acre tract in dispute is in Weber County and at all times material herein has been and now is taxed by that county. The Blackners have never paid taxes to Weber County on the land they claim to own.

I agree with the main opinion that oral testimony, ordinarily, is for the trial court to weigh and determine. However, this is subject to certain exceptions, and a trial court just cannot rely upon testimony which he prefers to believe when it appears by real evidence that the testimony is not true.

This case seems to me to be one where the testimony of the defendant cannot be accepted. He claims that the Weber River marking the boundary between Davis and Weber Counties changed its course in 1952 and departed from a straight line to follow a gooseneck channel. Rivers are known to change from goosenecks to straight lines in time of floods, leaving oxbow lakes as a reminder of where the stream formerly coursed. The defendants claim the river reversed the ordinary course of nature and took a roundabout way instead of its straight course. Maybe so!

But there are other matters which prevent me from affirming the trial court. In 1923, 1924, and 1925 surveys were made resulting in a topographic map. This map shows that the main channel of the Weber River at that time was in the so-called gooseneck. Then, too, aerial photographs were taken of the area long before any dispute arose over the course of the river. One was taken September 26, 1937; another on August 10, 1946; and the last one on September 1, 1952. These pictures and each of them show clearly that the main stream of the Weber River coursed in the gooseneck at the time of the taking.

2. Byram v. Payne, 58 Utah 536, 201 P. 401.

3. Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176.

There is no testimony that the pictures were other than what they purported to be or that they did not portray accurately the location of the river. In the absence of testimony that the pictures had been "doctored" or altered, I cannot think the oral testimony of witnesses contrary to the facts so clearly shown could be believed.

I would reverse the trial court as to the ownership of the five acres of land and direct that they be awarded to the plaintiff under the deed it secured from the Weber County owner.

HENRIOD, J., concurs in the dissenting opinion of ELLETT, J.