## HYDE PARK TOWN v. CHAMBERS et al.

No. 6201.   Decided November 3, 1939.   (104 P. 2d 220.)

*Young & Bullen,* of Logan, and *Irvine, Skeen, Thurman & Miner,* of Salt Lake City, for appellant.

*M. C. Harris* and *Jesse P. Rich,* both of Logan, for respondents.

PRATT, Justice.

Hyde Park Town sought condemnation of a right of way for piping water over the Weeks' Chambers' tracts of lands. These lands lie outside the town. The Weeks and the Chambers contested the suit on the ground that the Town already had the right of way, and was merely seeking to cut off their tap rights in the Town's pipe line and water; that the tap rights were the consideration for the granting of the right of way. The lower court denied the condemnation. Upon the counterclaim of Weeks and Chambers it granted

them a perpetual right to 300 gallons of water per day. This was to come from the Town's pipe line. The Town appeals.

In its appeal, the Town accepts the lower court's holding that it already has a right of way. By various assignments of error, it seeks to have that court's determination of 300 gallons of water per day set aside.

The controversy arises out of the following facts, which we shall briefly set out. As the Chambers are in a less favorable position in this case than the Weeks, we shall discuss only the facts concerning the latter.

About the year 1887, Weeks homesteaded the lands belonging to him. He constructad a ditch called the Lower Ditch which had its source in the same canyon and springs as the original source of the Town's pipe line. He lived on the land during the time required for homesteading and until about 1895. Shortly before leaving, he constructed what was called the Upper Ditch. Its source is at a point farther up the canyon. This was a high water right and so far as its use for irrigation purposes was concerned, ceased with the cessation of the spring flow. During most of the season, a little water ran down the Upper Ditch which could be used for stock watering purposes. After construction of the Upper Ditch, Weeks abandoned the Lower Ditch (1894). The Upper Ditch is still in use for irrigation; and there is some testimony in the record that it can be used, as originally, for stock watering purposes.

About 1911, the Town constructed its water system and in order to get water from the canyon, acquired, by contract (if in writing, it has been lost), a right of way for its pipe line, over Weeks' property, giving him the right to tap the line for his own use. He used the water so acquired principally for stock watering and for drinking while at work upon the premises. After obtaining this tap, Weeks discontinued using the Upper Ditch for these latter purposes. But the facts do not justify any conclusion that the giving up the Upper Ditch water was in any sense of the

word a part of the consideration to the Town for the tap rights and water. Thus, it cannot be said that there was an exchange of water rights between the Town and Weeks.

The pipe line when first constructed was a gravity line. As time went on and it became necessary to increase the Town supply, its officials decided to straighten the pipe and use pressure feed. This resulted in the present suit. The difference between the Weeks and the Chambers situation lies in the fact that the latter does not involve any question of having given up anything other than a right of way for the tap rights.

It is the Town's contention that the 1911 contract was void as in violation of Sec. 6, Article XI, of the Constitution of this State, which reads:

"No municipal corporation, shall directly or indirectly, lease, sell, alien, or dispose of any waterworks, water rights, or sources of water supply now, or hereafter to be owned or controlled by it; but all such water-works, water rights and sources of water supply now owned or hereafter to be acquired by any municipal corporation, shall be preserved, maintained and operated by it for supplying its inhabitants with water at reasonable charges: Provided, That nothing herein contained shall be construed to prevent any such municipal corporation from exchanging water-rights, or sources of water supply, for other water-rights or sources of water supply of equal value, and to be devoted in like manner to the public supply of its inhabitants."

The strange part of this appeal is: The Town is willing to abide by the lower court's holding that it has the right of way, and yet wishes to repudiate the consideration for that way. It did not assign as error the lower court's ruling upon the right of way. There were no cross-assignments by respondents upon the point either. Respondents are willing to continue with the arrangement as it originally existed. The Town is willing only as to the right of way. But in all fairness, if the Town is to have the right of way, it should pay to respondents the value and damages, if any, contemplated by a condemnation suit—if the 1911 contract is void.

We are of the opinion that the contract is void as contended by the Town. We need cite only the case of *Genola Town* v. *Santaquin City et al.*, 96 Utah 88, 80 P. 2d 930, and *Id.*, 96 Utah 104, 85 P. 2d 790, on rehearing, for the law upon the point. There is no necessity of repeating it here. There was no exchange of water rights here.

That being the case, what about the lower court's finding as to the right of way—the error upon which each party is silent although apparently for entirely different reasons? We are of the opinion that as the right of way arises out of a contract which we hold to be void, it must fall, along with other provisions of the contract which are the subject of attack in this case. The invalidity of the contract cannot be cured in part by a method of proceeding upon appeal. If the respondents desire to give the Town a right of way, all well and good, let them do so. Judging from their contest of this case, they have had no such thought in mind.

The contract being void, the Town's right of way and the the respondents' tap rights are merely permissive. If the Town desires, as it apparently does, to obtain a fee simple title to the right of way, let them do so by condemnation as originally contemplated. The value and damages they should pay for such condemnation should be measured as of the time of service of summons in this case (Sec. 104-61-12, R. S. U. 1933) subject, of course, to proof that that value or those damages, either or both, have been lost as a result of such condemnation.

The Town is not legally responsible for the loss of water rights in the Upper Ditch, if respondents or either of them have suffered such a loss. This court cannot make or direct any award of water to the Weeks nor to the Chambers. As to whether or not they may purchase surplus water from the Town to be used out of the taps, is, of course, a matter of contract and a matter for the de-

termination of the Town officials. If they have surplus water they may sell it within legal bounds (Sec. 15-8-14, R. S. U. 1933 and annotation thereunder).

The view we have taken of this case eliminates the necessity of considering other assignments of error, assuming them prejudicial. They will not again occur under the theories advanced herein.

The lower court's findings of fact, conclusions of law, judgment and decree are set aside and the case is remanded for a new trial.

Each party to bear his own costs.

MOFFAT, C. J. and McDONOUGH, J., concur.

WOLFE, Justice.

I concur. The contract to exchange the right of way for tap rights, if in perpetuity, was void but my doubt is as to whether it should not be construed as a contract giving the Town a right of way so long as it permitted the respondents to draw the Town's water from their taps. Under this view, respondents' tap rights would not be in perpetuity but limited to the period during which the city made use of the right of way. The Town's use of the right of way then is treated as currently running compensation for its furnishing of water. But whether the contract be considered unconstitutional and therefore void or one in which the Town furnished water in exchange for the rental value of the right of way subject to termination when the Town desided no longer to furnish the water, makes no difference in result. The Town sought to condemn the right of way and to obtain title and thus to terminate the contract. It had a right to refuse to furnish water under the contract; otherwise, the contract would be to furnish water in perpetuity which under the Genola case would be tantamount to parting with its water rights. Having refused to furnish water for the right, it no longer could claim the right of way and was forced to condemn. The court erred in

holding that it was not required to condemn because it already had the right of way in perpetuity. This holding, however, was not assigned as error and therefore cannot be directly reviewed but the decree awarding respondents 300 gallons of water per day in perpetuity was on the supposition that the city had a right of way in perpetuity. Since the supposition was incorrect, such decree was erroneous. The case, therefore, should be returned for proper adjudication on the issue of condemnation. In condemnation the ultimate reversion may be in the condemnees and their heirs if not used for the purpose for which condemned. If so, there seems but little difference in reality between what the Town had under its agreement as to the right of way and the conditional title which it will get by condemnation, but there is much difference in the fact that it is not required to continue to furnish water even though failure to do so precludes it from conscientiously retaining the right of way. By condemnation it serves notice that it will no longer furnish water and that it intends to pay directly for the land over which to transmit water for the Town, rather than pay for the privilege by furnishing water to respondents.

LARSON, Justice (concurring in part; dissenting in part).

I concur in the order of reversal and remanding the cause for a new trial, but I dissent from all the reasons assigned therefor and the legal proposition laid down in the opinion. The simplest way to give my reasons therefor is just to state my views of the matters involved in this cause.

Plaintiff commenced this action as a proceeding in condemnation June 23, 1937. After hearing had pursuant to notice served on defendants, the court on June 29, 1937, granted, signed and filed an order of occupancy of the premises sought to be condemned for the purpose of commencing and prosecuting the work of establishing and installing plaintiff's pipe line. In answers thereafter filed, defendants

denied the right or necessity for the taking of defendants' lands for a new right of way, and the trial court after conclusion of the trial upon the merits held there was no such necessity, and denied plaintiff's right to condemn. This was done in the face of the statement by defendants' counsel that he conceded plaintiff had shown sufficient grounds for condemnation. Such defense was not open or available to defendants at the time of trial in 1939. The question of the right to condemn and the necessity therefor are the matters before the court on the application for an order of occupancy. They must be raised there if at all. The order of occupancy was an adjudication that plaintiff has a right to resort to eminent domain, and of the necessity therefor. Such matters being determined by the order of occupancy, the only remaining question as far as the proceeding in eminent domain is concerned is the determination of damages. After plaintiff had, by proper leave of court, taken possession and installed its pipe line defendants cannot deny the right nor can plaintiff refuse to proceed for a determination of damages and pay the same. 10 R. C. L. Eminent Domain, p. 194; 18 Am. Jur. p. 977; *Chicago G. W. R. Co.* v. *Kemper,* 256 Mo. 279, 166 S. W. 291, Ann. Cos. 1915D, 815; *Philadelphia St. Ry. Company's Petition,* 203 Pa. 354, 53 A. 191; *Tennessee Cent. R. R. Co.* v. *Campbell,* 109 Tenn. 640, 75 S. W. 1012; *Bluefield* v. *Baily,* 62 W. Va. 304, 57 S. E. 805; *Ketchum Coal Co.* v. *District Court,* 48 Utah 342, 159 P. 737, 4 A. L. R. 619; *Ketchum Coal Co.* v. *Pleasant Valley Coal Co.,* 50 Utah 395, 168 P. 86. The writer is aware that in *Utah Copper Company* v. *Montana-Bingham Mining Company,* 69 Utah 423, 255 P. 672, this court held that under the facts in that case the order of occupancy was not controlling on the right to condemn,—but the facts there were very different from those here involved. And that case involved stipulations of counsel providing for further hearing on the matter. However, that case was a contest between private parties and no public rights as such were involved. And in that opinion Mr. Justice Straup admits that where the condemnation is sought by the state, a municipality, or by a

quasi-public corporation or utility, where the public body as such is involved, a different rule might apply. Here the town in the interests of the health of the inhabitants thereof had proceeded under a court order to install its new line and served its inhabitants for two years without complaint by defendants as to the occupancy. As against the public they cannot now be heard to question the right to maintain the action. Although neither party here has by assignment assailed the holding of the trial court on this matter since the cause is reversed and must be retried, I deem it advisable to make clear my views. For the reason set forth above, and not that assigned by my associate, I agree that the cause must be remanded for retrial.

I must dissent most vigorously from that part of the opinion of Mr. Justice PRATT holding that the agreement of 1911, between Weeks and Hyde Park Town, is a violation of Sec. 6 of Article 11 of the Constitution of Utah. The constitutional provision was written to prevent towns from alienating their water sources and supply, and was not to prevent the town from utilizing its supply, or from proceeding in sane and practical ways to give its inhabitants water service and a supply of water as pure and wholesome as possible. To utilize its water supply properly and efficiently the town should install a proper water system, using pipes instead of open contaminated ditches. The installation of pipes may require rights of way. The acquiring of rights of way by purchase may be, in small communities like Hyde Park, an insurmountable obstacle if cash must be paid. Too often such villages are already taxing to the legal constitutional limit, and would need be without a proper water system; whereas a mere top right, still leaving the inhabitants more water than they would have in open ditches, would make a modern system available. Furthermore, one must know as a matter of common knowledge that putting the water in and through pipes conserves, saves and increases the water supply to the inhabitants of the town, and is therefore a saving, or the acquiring of an increase in the water

supply rather than a loss or alienation thereof. The constitutional provision, after forbidding alienation of municipal water rights or sources of supply, provides: "but all such waterworks, water rights and sources of water supply * * * *shall be preserved, maintained and operated by it for supplying its inhabitants with water* at reasonable charges." (Italics added.) I am unable to see how any one reading this record can say that what was here done was not a most efficient and necessary thing to do, in order to carry out the mandate of the constitution to so operate its water right as to supply the inhabitants of Hyde Park with wholesome water at reasonable charges.

There is still another reason why I must agree with the trial court on this issue rather than with my associate. According to the testimony, when Hyde Park decided to install a water system it had no culinary water. It took steps to find and acquire a water supply and also a means of getting it to the inhabitants. As a part of a general plan of action it entered into negotiations with the Smithfield Irrigation Company for water, and with defendants and their predecessors in title for rights of way. Neither was of any practical use without the other. As a result the town acquired water from Smithfield Irrigation Company and the rights of way involved in this action from defendants and their predecessors, the town intending and expecting to receive for culinary use of its inhabitants the water it took through its pipe line, less the "tap dribbles" as they called it, allowed for the right of ways. It seems evident to me that the town instead of alienating any water rights received and enjoyed all it expected or claimed, all it thought it was to receive, and all it paid for, out of this transaction involved in the purchase and installation of its water supply and system. Constitutions are written to afford a sane, practical, sensible form of government and not to "hogtie" or strangle orderly and practical application of the powers and principles of the government so set up. Governments, established under constitutions, are the servants of the pub-

lic and not its master or dictator. The people, and not the government is the source of power.

There are two other grounds upon which I think the prevailing opinion is in error. The trial court found as a fact that respondents Weeks and Toolson, predecessors of defendant Chambers, surrendered, transferred, conveyed, and exchanged to Hyde Park Town the ditch culinary rights they had for the tap privileges. (The town's witnesses made no denial of this fact.) While the evidence is meagre I think there is sufficient evidence of that fact to sustain the finding of the trial court. But the position of the prevailing opinion puts one in a dilemma. If the town could not make the agreement with defendants for the tap rights then it never did do so. If it never did so, then we must conclude that it did a legal thing and gave defendants the right to take their ditch culinary water through the pipe in return for the right of way. That clearly would be legal and has some considerable support in the evidence. The town would thereby obtain any seepage and evaporation savings of defendants' waters, and any unused excess thereof.

Since the cause must be remanded and retried I think the parties should be permitted to recast their pleadings, should they so desire, and the whole cause be untried so the parties may present fully any evidence they may have upon the questions.