## ZION'S SAV. BANK & TRUST CO. v. TROPIC & EAST FORK IRR. CO.

No. 6425.   Decided June 17, 1942.   (126 P. 2d 1053.)

See 19 C. J. S. Corporations, sec. 943; 13 Am. Jur. 793.

*Thomas & Thomas,* of Salt Lake City, for appellant.

*Larson & Larson,* of Manti, for respondent.

LEVERICH, District Judge.

Appellant Bank, as trustee of the beneficiaries under a certain trust agreement, sued the respondent upon a promissory note and appeals from an adverse judgment. Appeal is on the judgment roll.

At the conclusion of the trial by jury, the court first directed a verdict for the Bank and judgment was entered thereon against the Irrigation Company for $3,504.77 owing on the note.

Thereafter the Irrigation Company moved for a new trial. At the hearing on that motion, the court declared it was of the opinion it had erred and should have directed a verdict for the defendant. The Irrigation Company then moved to set aside the verdict and judgment thereon asking for a judgment in its favor: no cause of action. (The Bank waived the untimeliness if any of that motion but reserved the right to appeal if the motion were granted.) The motion was granted, the verdict and judgment thereon set aside, findings and conclusions were demanded by the Bank and made by the Court, and judgment was entered for the defendant: no cause of action. It is from that judgment that the Bank appeals.

The facts are as follows: On May 10, 1930, the defendant company, pursuant to a resolution of its directors, executed a note for $5,000 to one Grace V. Holt, consideration for which note was a quitclaim deed by W. F. Holt, her husband, to defendant company, of his interest in certain waters of the Sevier River.

Mrs. Holt assigned the note to the plaintiff Bank, who holds it as trustee for Mrs. Holt and her two children. For six years, the defendant made payments on the note, reducing it to $3,504.77 and then refused further payments. When sued, defendant pleaded:

(1) That the note was ultra vires.

(2) That Holt did not own the water rights mentioned in his deed and therefore the defendant received no consideration for the note.

Plaintiff Bank, in its reply, denied ultra vires and pleaded estoppel of the defendant to assert its alleged want of power because it had received and retained Holt's quitclaim deed.

Plaintiff Bank does not claim to be a bona fide purchaser of the note and therefore it is in no better position than W. F. Holt or Grace V. Holt, the payee named in the note. Plaintiff contends that it is in the same position as either W. F. Holt or the payee, Grace V. Holt and that if the payee, Grace V. Holt, could enforce collection of the note then the Bank, as assignee, could also enforce collection.

The court concluded that the respondent had no power to purchase or contract for the purchase of water rights nor to execute the note; that the promissory note was therefore ultra vires and void ab initio; that plaintiff and its predecessors, the Holts, were charged with notice of the lack of power of defendant corporation and that the defendant was not estopped to assert the defense of ultra vires. Judgment was entered accordingly; no cause of action.

The first question to be determined is whether or not the Irrigation Company, in purchasing the water rights of Holt and executing its note therefor, was acting beyond the privileges conferred by its charter. It is stated in the Articles of Incorporation:

"The object of this corporation is to construct a canal from the East Fork of the Sevier River to Tropic and to keep the same in repair for the conducting of the water of said stream to the town of Tropic also to control the waters of Bryce Canyon for culinary and irrigation purposes for said Town."

Article XII, Section 10 of the Constitution of the State of Utah places a limitation upon all corporations organized under and pursuant to the laws of Utah in the following words:

"No corporation shall engage in any business other than that *expressly* authorized in its charter, or articles of incorporation."

Several cases decided in this court have held that a strict interpretation must be given articles of incorporation in view of this constitutional limitation. In the case of *Tracy Loan and Trust Company* v. *Merchants' Bank,* 50 ■ Utah 196, 167 P. 353, 355, the court, in passing upon the interpretation of articles of incorporation, after quoting Article XII, Section 10 of the Utah Constitution, makes the following statement:

"This court, in an early case under statehood (*Seeley* v. [*Huntington*] *Canal* [*& Agricultural Ass'n*], 27 Utah 179, 75 P. 367), adopted the rule that a corporation in the management of its affairs and conduct of its business is limited to the purposes provided and enumerate in the object clause of its articles of incorporation. In fact under the provisions of the Constitution  *  *  *  it would seem that no other rule or construction was permissible in this jurisdiction."

And further on in the opinion it is stated:

"Implied powers of a bank, or of any corporation for that matter, are those incidental to and connected with the carrying into effect or the accomplishing of the general purposes of the corporation, as expressed in the object clause of its articles. When it has been determined that the acts done, or attempted to be done, are not within the powers of the corporation to do, no implied powers can validate such acts."

From the wording of the Articles of Incorporation of the Tropic and East Fork Irrigation Company it is clear that the only *expressed* purpose of the company is to construct canals between certain points and to keep them in repair. There is no express authority to purchase ■ water or water rights. By the express limitations of authority, all other powers beyond those given are, by implication, excluded. *Thomas* v. *West Jersey R. Co.,* 101 U. S. 71, 25 L. Ed. 950. The Thomas case was cited with approval in the case of *North Pt. Consolidated Irrigation Co.* v. *Utah & S. L. Canal Co.,* 16 Utah 246, 52 P. 168, 40 L. R.

A. 851, 67 Am. St. Rep. 607. See, also, *Davis* v. *Flagstaff Silver Min. Co. of Utah*, 2 Utah 74, and *Seeley* v. *Huntington Canal & Agricultural Ass'n*, supra.

We therefore hold that the corporation and its officers and directors were acting beyond the privileges conferred upon the corporation by its charter and the laws of the State of Utah.

Having decided that the contract was ultra vires, we now come to the question as to whether such ultra vires contract can be enforced. Two theories prevail with respect to the enforcement of ultra vires contracts:

(1) The first theory (denominated "the Federal rule") is that the contract is void and that no recovery may be had under such contract. Under this theory, no recovery is allowed by way of damages nor by an action of specific performance of the contract where such contract is wholly executory. Neither is any action allowed on a contract that has been performed by both parties. Where the contract has been executed by one of the parties and the other has received the benefits arising by reason of such performance, the jurisdictions following the Federal rule do not permit a recovery on the contract itself but *do* permit a recovery for the benefits which have been received by the other party. The Federal rule does not permit either party to the ultra vires contract to set up estoppel to a plea of ultra vires. This rule has been announced by the Supreme Court of the United States and is followed by a majority, but not all, of the Federal courts and several of the State courts.

(2) The other theory which is followed by a great majority of the State courts is that the ultra vires contract, not otherwise illegal, is not void, but under certain circumstances and conditions the contract itself may be enforced.

Most jurisdictions are in harmony in respect to the results reached in all situations, the only difference being that where the contract has been performed by one of the parties, the jurisdictions following the Federal rule do not

permit an action based upon the contract, as they say that the contract is void, whereas the courts following the second theory say that the contract is not "void" but is enforceable when one party has received benefits by reason of the performance of the contract by the other party. Where this condition exists, the courts have held that the party receiving the benefits is estopped to set up the defense of ultra vires.

Utah follows the rule which has been followed by a majority of the State courts. In the case of *Baker* v. *Glenwood Mining Co.,* 82 Utah 100, at page 107, 21 P. 2d 889, 892, the plaintiff sued upon two promissory notes which were executed and delivered by the defendant corporation. The corporation maintained that the officers of the corporation acted beyond their powers in executing the notes. The courts' permitting recovery on the notes themselves is strong indication that Utah is committed to the rule followed in the majority of the State courts, in that they permit a recovery on the ultra vires contract itself where, under the circumstances and conditions, it would be inequitable not to enforce the contract. The following is from the opinion:

"This court is committed to the doctrine that where a corporation has received the benefits of a contract, and while it still retains the fruits thereof, it will be estopped from urging as a defense that the contract was ultra vires the corporation or that the corporate officers were without authority with respect thereto. *Millard County School District* v. *State Bank,* [80 Utah 170], 14 P. 2d 967; *Huntington R. M. & Manufacturing Co.* v. *Miller,* 60 Utah 236, 208 P. 531."

It will be observed from the above quotation that in order to estop a corporation from asserting the defense of ultra vires, the corporation must have received benefits as a result of the performance. This is the general rule. 7 Fletcher Cyc. Corp. (Perm. Ed.) § 3478, p. 627, states:

"It is generally held that if the corporation which has entered into an ultra vires contract has received no benefits from the performance of the contract by the opposing party, it is not estopped to plead ultra

vires, although there is some authority to the contrary apparently holding that there may be an estoppel without regard to the receipt of benefits."

The author cites only one case as holding contrary to the general rule stated, and that is *United States Fidelity & Guaranty Co.* v. *Cascade Construction Co.*, 106 Wash. 478, 180 P. 463. That case was directly overruled in *Millett* v. *Mackie Mill Co.*, 193 Wash. 477, 76 P. 2d 311. Among the cases cited in Fletcher, supra, in support of the general rule is *Brand* v. *Eastland County Lumber Co.*, Tex. Civ. App., 77 S. W. 2d 600, 602, where it is stated:

"It is true that a corporation may be estopped to plead ultra vires, where corporate funds or assets have been augmented by money or other property received in the transaction. * * * But a party may enforce such estoppel only when he shows that benefit derived from the transaction with such corporation was direct and material. It is not sufficient to show an indirect or merely incidental or negligible benefit."

The grantor, Holt, in this case intended to convey his interest in certain water; the grantee intended to receive Holt's rights in the water. If Holt had no rights whatever to convey on May 10, 1930, then certainly the defendant corporation received no benefit. On the other hand, if Holt had water rights to convey at that time and those rights passed to the corporation then the corporation received the benefit of those rights and it would be immaterial what happened to those rights after they had passed to the corporation. The corporation, in order to be bound by its contract, must have received some material benefit upon the performance of the contract by the other party. We must therefore, examine the findings of the trial court to determine whether Holt had something on May 10, 1930, to convey to the corporation.

The trial court found that Holt executed—and defendant's officers accepted—delivery of a quitclaim deed wherein Holt conveyed all of his

"interest in and to the waters of the East Fork of the Sevier River coming to him by and on account of the above-mentioned Decree and Judgment. (* * * Judgment dated February 11th, 1897, and recorded in Book A., page 14-15 of the records of Garfield County, Utah, in the case of John E. Steele, plaintiff against the Tropic and East Fork Irrigation Company, defendants.)"

The court further found that this deed was, on March 10, 1931, recorded at the request of the secretary of the defendant corporation upon the records of Garfield County and that no other consideration was given by said W. F. Holt or Grace V. Holt for the promissory note sued upon.

With respect to whether Holt, the grantor, had any water rights to convey on May 10, 1930, the date of execution of the deed, the Court finds as follows:

(Title of Court and Cause)
"Findings of Fact and Conclusions of Law
"* * *
"9. That prior to the time of execution of said deed by W. F. Holt he had derived title by mesne conveyances to water rights decreed to John E. Steele under a decree of this court dated February 11, 1897, rendered in a case entitled John E. Steele, plaintiff, vs. Tropic & East Fork Irrigation Company, a corporation, defendant. That said W. F. Holt had not at any time filed any claim with the State Engineer of Utah, or with the District Court of Utah, in and for Millard County, in Civil Case No. 843, in which case the water rights in the Sevier River and its tributaries were adjudicated by proceedings commenced prior to 1930 and ending by a decree of said court dated 30 November, 1936, said case being entitled Richlands Irrigation Company et al. vs. Westview Irrigation Company, et al. That a predecessor in interest of said W. F. Holt, to wit, one J. M. Veater, had however filed a claim (jointly with one Roy Veater) with the State Engineer in said adjudication suit, which claim is shown in the State Engineer's Proposed Determination as follows:

" '(b) 1888 153.1 3.83 c. f. s.⎫ From May 1
                         2.56 c. f. s.⎭ to Oct. 15
" 'Claim No. 124
" 'Diversions No. 130, 130½, 131, 132.
" 'Plat No. 151
" 'Said water to be diverted from each, any or all of the following described points: (1) From Spring Creek at a point 700 feet S. and 1900 feet E. of the NW corner of Sec. 23, T. 35 S., R. 3 W., into the

Veater No. 2 ditch. (2) From the East Fork of the Sevier River at a point 750 feet N. and 280 feet E. of the S. W. corner of said Sec. 23, into the Veater No. 1 Ditch and used to irrigate 129.2 acres of land embraced in Sec. 13, of the aforesaid Township and Range. All under Veater No. 1 and No. 2 Ditches. (3) From the East Fork of the Sevier River at a point 130 feet N. and 1210 feet E. of the NW corner of said Sec. 13, into the Steele Ditch and used to irrigate 18.9 acres in Sec. 14 of the aforesaid Township and Range. (4) From the East Fork of the Sevier River at a point 800 feet N. and 2480 feet W. of the SE. corner of Sec. 14, T. 35 S., R. 3 W., into the Jensen Ditch and used to irrigate 5.0 acres of land in said Sec. 14.'

"That by the terms of the decree in said river adjudication suit a water right was decreed to one Arthur Whittaker in language as follows:

" 'To be diverted from the East Fork of Sevier River and Spring Creek, tributary to East Fork, Garfield County,

Arthur Whittaker: Priority—1888—

" 'Period of use—May 1 to Oct. 15

" 'Maximum—3.83<br>" 'Minimum—2.56

" 'To be diverted from either spring creek into Veater Ditch No. 2; from East Fork into Steele ditch or from East Fork into the Jensen Ditch.'

"That no water right on said East Fork of the Sevier River was decreed to said W. F. Holt by said decree. That it is not shown by the evidence herein whether or not there was decreed to the defendant company in said suit any water right which included the right described in the above mentioned deed from W. F. Holt."

The court apparently determined that Holt did have some water rights at one time, but that he either forfeited those rights or was foreclosed from asserting any rights by reason of Laws of Utah 1919, Sections 24 and 29 of Chapter 67:

Laws of Utah, 1919, Section 24.

"Time for filing and contents of statement.

"Each person, corporation or association claiming a right to use any water of said river system or water source shall, within sixty days after the service of such notice mentioned in the preceding section, file in the office of the clerk of the district court, a statement in writing which shall be signed and verified by the oath of the claimant, and shall include as near as may be the following: * * *"

Laws of Utah, 1919, Section 29.

"Effect of statement—failure to make operates as a bar  *   *   *
"The filing of each statement by a claimant shall be considered no-
tice to all persons, corporations and associations of the claim of the
party making the same, and any person, corporation or association
failing to make and deliver such statement of claim to the clerk of
the court within the time prescribed by law shall be forever barred
and estopped from subsequently asserting any rights and shall be held
to have forfeited all rights to the use of said water theretofore claimed
by him; provided, however, that any claimant upon whom no other
service of said notice shall have been made than by publication in a
newspaper *may apply to the court for permission to file a statement
of claim after the time therefor has expired, and the court may ex-
tend the time for filing said statement, not exceeding six months from
the first publication of said notice;  *   *   *"*   (Italics added.)

However, it cannot be determined from these findings
whether Holt, at the time of the conveyance (May 10, 1930)
had been foreclosed and barred from asserting his rights.
With respect to the claims of one Veater and one Whittaker
as set forth in the Findings quoted above, there is no con-
nection whatever with Holt's purported rights.  The defen-
dant in its brief admits:

"There is nothing found as to whether this particular water (re-
ferring to Veater's and Whittaker's) named in the aforesaid partic-
ular claim and the aforesaid Decree, is the same identical water that
was deeded to Holt in 1897."

The fact that no water was decreed to Holt in 1936 cer-
tainly does not show, under the circumstances, that Holt had
no water rights on May 10, 1930.  Nor does it follow that
because the defendant company was not decreed water in
1936 that it did not receive rights from Holt in 1930.

As to proof of defendant's receiving water, the Court
found as follows:

(Title of Court and Cause)
"Findings of Fact and Conclusions of Law"
"*   *   *

"11. That there is no proof that the defendant corporation or its
stockholders have received any water or the use of any water at any

time by reason of the transaction hereinabove referred to between the officers and directors of the defendant corporation and W. F. Holt. * * *"

From the foregoing finding it cannot be determined whether Holt, at the time of the conveyance, had rights to the use of certain water which passed to the corporation. The corporation may not have received any water and, further, the corporation may not have received the use of any water, but it could have received the *right* to the use of the water. If defendant corporation received the *right* to the use of the water at the time of the conveyance and thereafter, by reason of some failure on its part to either *use* the water or *receive* the water, it would nevertheless have received a benefit and would thereby be estopped from asserting ultra vires if the benefit were a material one.

The court, in its conclusions of law based on the foregoing findings, concludes that:

"* * * that the defendant's defense of ultra vires is available against the plaintiff herein and defendant is not estopped to claim the benefit of such defense."

To this we cannot agree, for the findings are not sufficient to ascertain whether or not Holt had, at the time of the execution and delivery of the deed, any interest in the water that he could convey.

The cause is remanded for the trial court to make specific findings on the question as to whether Holt had any interest in the water at the time of the conveyance by quitclaim deed. If evidence is not sufficient to permit a finding to be made in this regard, then the court to reopen trial with permission to produce evidence on this point. Costs to appellant.

WOLFE, LARSON, and McDONOUGH, JJ., concur.

MOFFAT, C. J., having disqualified himself did not participate herein.

PRATT, J., not participating.