458 P.2d 625

Dean E. PARK, Plaintiff and Appellant,

v.

ALTA DITCH & CANAL COMPANY, a corporation; Metropolitan Water District of Orem, a public corporation; and Orem City, a municipal corporation, Defendants and Respondents.

No. 11345.

Supreme Court of Utah.

Sept. 8, 1969.

2.  116 Utah 170, 209 P.2d 208.

3.  Pacific Pipeline Construction Co. v. State Board of Equalization, 49 Cal.2d 729, 321 P.2d 729.

E. W. Clyde, E. J. Skeen, of Skeen & Skeen, Salt Lake City, for appellant.

George W. Latimer, Keith E. Taylor, Joseph Novak, Salt Lake City, H. Vernon Wentz, Orem, for respondents.

CROCKETT, Chief Justice:

Plaintiff, Dean E. Park, brought this action to assert and have determined his rights to his claimed aliquot share, 2/288ths, represented by two shares of stock of water of the defendant Alta Ditch & Canal Company. He further insists upon the right to take through a connection with the pipeline of Orem City and thus at a higher point of diversion than the defendants contend he is entitled to. Orem City and its Metropolitan Water District were made de-

fendants. Upon a trial, the District Court found that the plaintiff was the owner of two shares of stock and entitled to participate, as other shareholders, in his pro rata 2/288ths of the water distributed by the company, but otherwise found the issues in favor of the defendants and against the plaintiff: that his rights were subject to and limited by water exchange agreements between Alta Ditch & Canal Company and Orem City; and that he is entitled to delivery of his portion of the water at a lower point of diversion, but has no vested right to the connection with the Orem City pipeline, nor to divert water directly from the Alta springs. Plaintiff appeals, attacking those portions of the decree not in accord with his contentions above stated.

The defendant Alta Ditch & Canal Company is successor to a mutual water corporation of the same name organized May 20, 1893, for the purpose of transporting and distributing water of the "Alta Ditch and Canal for * * * the irrigation of lands, farms, orchards and gardens * * *" and all other useful and lawful purposes. The charter expired 50 years later on May 20, 1943. Thereafter in November 1946 the individual stockholders of the old corporation formed the successor corporation, defendant Alta Ditch & Canal Company. However, Orem City, which held 101½ shares of the 288 shares in the old corporation (34.82% of the water of the Alta Ditch) did not join. Without burdening

this opinion with further details of the succession, the following facts can be accepted in this proceeding: that Alta Ditch & Canal Company has succeeded to the water rights and assets of the prior corporation (Old Alta) and/or its respective stockholders;[1] that this includes 101⅙ shares of such water owned by Orem City, and two shares owned by the plaintiff which he purchased in 1947 and which it is conceded entitles him to ⅖₈₈ths of the corporation and of the water distributed by it.

The difficulty here arises because of the plaintiff's insistence that he and his shares are not bound by certain water exchange agreements between the Alta corporation and Orem City. By one of them Alta leases to Orem the waters from the Alta Spring during the fall-winter season, October 15 to May 1, for each year until 1977; and by the other, from May to October each year exchanges the water of Alta Spring for greater amounts of water from the Deer Creek Reservoir plus certain cash payments, which latter agreement runs through 1976. Plaintiff's argument is that as owner of shares of stock in a mutual water company he has an absolute and indefeasible right to his pro rata share of the particular water of the Alta Spring; and that as such a corporation, Alta has no authority to divest his interest in said water; nor to do anything other than manage and distribute the water in proportionate shares; and that consequently, in so far as his rights are concerned, the lease agreements by which Alta purported to trade away the Alta Spring water for replacement by Deer Creek water and cash are invalid and unenforceable.

These contentions require an examination of the statutory and decisional law governing mutual water companies, and an analysis of the evidence concerning the relationship between the plaintiff stockholder and the company, including the articles of incorporation. This is so because the rights of the parties depend upon the contract, which in turn depends upon their agreement, and what they must be deemed to have agreed to.

Historically mutual water companies came into existence as private corporations organized to enable persons who owned water from a common source to unite in a nonprofit, cooperative enterprise to transport their respective portions of the water for their use. They exchanged the water rights for shares of stock;[2] each receiving shares in the water, and in the corporate property,[3] proportional to his ownership of the total water. It was deemed that the corporation held title for the shareholder

1. See St. George City v. Kirkland, 17 Utah 2d 292, 409 P.2d 970.
2. 3 Kinney, Irrigation and Water Rights, §§ 1480 and 1483 (2d Ed.1912).

3. Ibid. See also George v. Robison, 23 Utah 79, 63 P. 819 (1901).

as trustee.[4] He could of course sell his stock, and thus his beneficial interest in the corporation and the water, to a purchaser.

■ We are aware that arising out of the foregoing concepts it has been held in certain cases that the corporation has no power to make a conveyance which would divest the shareholder of his water rights.[5] But there are certain aspects of this case in which it differs substantially from the cases cited and relied upon by the plaintiff. The agreements in question here are not in essence a conveying away of water; nor do they deprive the plaintiff of his water. They are basically agreements concerned with the management and exchange of water; and what they do to plaintiff is to compel him to accept his portion of the water distributed by the company in the same manner as other shareholders. If the officers of the corporation determine that it is more efficient, economical, or in some other way advantageous to the corporation and/or its stockholders to exchange certain waters for other waters to be so distributed to them, it would not seem to do any violence to its chartered powers to employ that

means of distributing waters to its shareholders.

The foregoing is said notwithstanding the plaintiff's argument for strict limitation upon powers of corporations in which he places reliance on Article XII, Section 10, of the Utah Constitution, that: "No corporation shall engage *in any business other* than that expressly authorized in its charter, or articles of incorporation."[6] The significant fact is that the Alta corporation is not attempting to engage in *any other business.* The problem presented here relates to the manner in which it carries on the business it is engaged in: that is, the transportation and distribution of water to its shareholders.

■■ From an examination of the various cases dealing with the authority of corporations relating to their charters, whether in terms of strict interpretation, or in the allowance of a reasonable latitude to carry out its purposes, it will be seen that the decision usually depends upon the factual situation and upon the justice of the cause involved. Notwithstanding what has been said in specific cases, we believe that

4. East River Bottom Water Co. v. Boyce, 102 Utah 149, 128 P.2d 277 (1942); Continental National Bank of Salt Lake City v. Minersville Reservoir & Irrigation Co., 73 Utah 243, 273 P. 502 (1928); and supra footnote 1, § 1481.

5. See 3 Kinney, Irrigation & Water Rights, § 1487 (2d Ed.1912); Smithfield West Bench Irrigation Co. v. Union Central Life Ins. Co., 105 Utah 468, 476, 142 P.2d 866, 869 (1943); Genola Town

v. Santaquin City, 96 Utah 88, 102, 80 P.2d 930, 936 (1938); and the recent case of St. George City v. Kirkland, footnote 1, supra.

6. For cases dealing with strict construction of corporate powers see Seeley v. Huntington Canal & Agricultural Ass'n, 27 Utah 179, 75 P. 367 (1904); and Zion's Savings Bank & Trust Co. v. Tropic & East Fork Irrigation Co., 102 Utah 101, 126 P.2d 1053 (1942).

the better view and the one which best serves the ends of justice is that the corporation should have the powers expressly given and those that are necessarily implied in order to enable it to efficiently and effectively carry on the purposes for which it is created. Such a view was indicated in the case of Tracy Loan & Trust Co. v. Merchants' Bank et al., 50 Utah 196, 202, 167 P. 353 (1917), the court noted that:

> * * * Implied powers of a bank, or of any corporation for that matter, *are those incidental to and connected with the carrying into effect or the accomplishing of the general purposes of the corporation,* as expressed in the object clause of its articles. When it has been determined that the acts done, or attempted to be done, are not within the powers of the corporation to do, no implied powers can validate such acts. * * *[7]

In the present case when all of the facts are considered, and particularly the fact that it is apparent that the officers of the corporation thought it to be in the best interests of the corporation and its shareholders to accept greater quantities of Deer Creek water and some cash payments for the Alta Spring water, we are not prepared to say that there was any such transgression of corporate authority as to entitle the plaintiff to invalidate the agreements.

There is another proposition bearing on this problem which is worthy of mention here. The status of the lease agreements between Alta and Orem should be looked at in the light of our new Nonprofit Corporation Act adopted in 1963.[8] It is made specifically applicable to "[m]utual irrigation, canal, ditch, reservoir and water companies and water users' associations * * *"[9]; and it provides that:

> No act of [a] nonprofit corporation and no conveyance or transfer of real or personal property to or by such a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer * * *.[10]

This provision was undoubtedly designed to place some limitations on the defense of ultra vires and to give solidarity to agreements where third parties had dealt with such a corporation in good faith without

---

7. As to a liberal construction consistent with corporate purposes see Union Pacific Railroad Co. v. Trustees, Inc., 8 Utah 2d 101, 329 P.2d 398 (1958). In Beggs et al., v. Myton Canal & Irrigation Co., 54 Utah 120, 121, 179 P. 984, the court rejected the ultra vires contention of a minority of stockholders where the corporation had sold all of the water

rights. There was admittedly the special circumstance that the company was insolvent and unable to pay its debts.

8. Sec. 16–6–18 et seq., U.C.A.1953 (1967 Supp.).

9. Sec. 16–6–20(c), U.C.A.1953 (1967 Supp.).

10. Sec. 16–6–23, U.C.A.1953 (1967 Supp.).

knowledge of the details of its articles of incorporation or of its internal operations. In that connection it is appropriate to note that there was proper notice of the meeting at which the agreements in question were dealt with. The foregoing, coupled with the fact that the agreements have been arrived at openly and in good faith, and with knowledge of all of the stockholders including the plaintiff, and the plaintiff has had his proportional benefit of the operations of such agreements since that time, reassure us in our conclusion that the determination of the trial court that the agreements in question are not subject to nullification by the plaintiff should be sustained.

■■ The next issue requiring our attention is the plaintiff's claim that he had an agreement with Orem City by which he was permitted to "tap in" to the 14-inch pipeline by which the City conveys the water from the Alta Spring. It appears to be a fact that from 1949 to 1958 he did receive water through a 4-inch pipeline; and that in 1958 this was replaced by a 6-inch line, which was done with the knowledge of the president and other officers of the defendant Alta. Plaintiff places reliance upon these facts and upon the minutes of the Orem City Council of October 12, 1949. They show that the plaintiff appeared for the purpose of obtaining an agreement to take his water through the Orem City 14-inch pipeline and state that he:

* * * wished to have the City include his water with theirs and use it in regular turns each week, taking out the equivalent of two shares from the pipeline through a meter and if more water is used then he would be charged for it. He was told that it was felt that the project could be worked out by a State Engineer and the City Engineer and that it would probably be agreeable with the Council.

It also appears to be a fact that the then Orem City Attorney, Mr. Wentz, had been directed to prepare an agreement, which the latter said he prepared. But no one contends that such an agreement was ever executed. In any event with respect to this issue the trial court found upon evidence which is in dispute that:

No agreement, either in writing or otherwise, has been entered into between plaintiff and the defendants, or any of them, granting to plaintiff any right to use defendant Orem City's 14 inch pipeline or its other diversion works or facilities to convey any water from the Alta Springs to plaintiff's property and plaintiff has no right to maintain the connection to defendant Orem City's 14 inch pipeline or to convey any water by means of defendant Orem City's 14 inch pipeline or its other diversion and conveyance works or facilities.

While the statement concerning the trial court's finding is sufficient to dispose of

that issue, it is not amiss to mention that in addition thereto such a right as plaintiff claims raises a question as to what its effect would be under Article XI, Section 6, of our Constitution:

> No municipal corporation, shall directly or indirectly, lease, sell, alien or dispose of any waterworks, water rights, or sources of water supply now, or hereafter to be owned or controlled by it * *.

It would seem that the placing of such a permanent easement upon the waterworks system of the City may well be considered as violating the constitutional provision just quoted.[11]

■■ The final problem presented relates to the counterclaim of Orem City for $1,864.45 as the value of water which it asserts was delivered to and used by the plaintiff, in excess of the amounts he was entitled to, from 1962 until 1966 when this suit was commenced. It is appropriate here to recall attention to the traditional rule: that the burden was on the party asserting the claim (counterclaimant, Orem City) to prove it by a preponderance of the evidence. When the court has refused to so find, it is not strictly accurate to apply the usual rule

of review that its finding will be sustained if supported by any substantial evidence. The correct rule in such instance even more strongly favors the plaintiff's position here. It is that unless the evidence is such that all reasonable minds would so conclude, and thus compels such a finding, we will not upset the trial court's refusal to so find. It is shown that there is and was dispute between the parties as to whether the plaintiff was entitled to any additional water without pay, that during those years he was not billed for water, except that one bill for about $7 was sent to him, which he did not pay. Inasmuch as the trial court appears to have accepted the plaintiff's version of the evidence that there was no such intention or agreement that he was to pay for the water in question, we do not see therein any basis to compel a finding to the contrary. Therefore, that portion of the judgment also cannot be disturbed. (All emphasis added.)

Judgment affirmed. Costs to defendant.

CALLISTER, TUCKETT, and ELLETT, JJ., concur.

HENRIOD, J., concurs in the result.

---

11. See Hyde Park Town v. Chambers, 99 Utah 118, 104 P.2d 220 (1940), wherein it was held that a contract to sell a land- owner tap rights in exchange for a right of way violated the constitutional provision referred to.