493 P.2d 639

Alan C. THOMSON et al., Plaintiffs and Appellants,

v.

George J. CONDAS et al., Defendants and Respondents.

No. 12458.

Supreme Court of Utah.

Jan. 28, 1972.

Lorin N. Pace, Salt Lake City, for appellants.

Joseph Novak, Salt Lake City, for respondents.

HENRIOD, Justice:

Appeal from a judgment of no cause of action in a case tried to the court, where the complaint's main thrust was to establish a "public thoroughfare" by more than 10 years continuous use by the general public under the provisions of Title 27–12–89, Utah Code Annotated 1953. Affirmed with costs to respondents.

As a preliminary matter it is significant to note that about 450 pages of testimony and other evidence were utilized in an effort to prove or disprove that the "public thoroughfare" claimed lay or did not lay on an abandoned railroad bed called the "Quarry Road," formerly used as a spur to haul rock from a quarry off the railroad's main line. At the end of this 450 page transcript, plaintiffs conceded that there was no merit to the claim asserted in their complaint before 1929 whereupon they

asked leave to amend and include another dirt road which was called the "Lower Road," ostensibly for the purpose of conforming to the evidence. Although there was and is some doubt as to the procedural propriety of granting such request under the circumstances of this case, nonetheless the amendment was allowed. It makes no difference, however.

■ It is obvious from the record that the plaintiffs, in assembling their brief on appeal, recited facts favorable only to their own interests and claims, some of which appear to have been out of context with the whole record. Plaintiffs say the facts they recite were not controverted with which defendants, the trial court, and this court disagree. Moreover, we believe they do not measure up to that clear and convincing quantum and quality of proof universally demanded for the establishment of a public thoroughfare or the taking of another's property.[1]

■ This writer will attempt to review the briefs of the parties as to the facts each urges, with the belief that it will be a fair and accurate recount of their factual claims,—parenthetically observing that is the prerogative of the arbiter of the facts in our judicial system to believe or disbelieve testimony of a controversial bent,[2]— as seems to be the case here as to much of the really material matters involved. In doing this, the evidence adverted to in the briefs of both sides accurately seem to be supported by the record, although some perhaps is related out of context.

Here's what plaintiffs say are the facts: In 1894 there was a stone quarry from which stone was hauled by rail. The superintendent married witness Snyder's sister, resulting in frequent visits via a wagon road to the quarry where buildings incident to the quarry were situated, including the superintendent's house, bunkhouse, stable and blacksmith shop. On the visits mentioned the lower road was used. Between 15 and 25 men worked there at the time, including two Chinese cooks. Later on another man operated the quarry. There was no fence or obstruction of the road. The quarry closed down after which one Garn lived in the bunkhouse, with no egress except the road, and a brother of the superintendent's wife, bought the pigs used to consume garbage at the quarry from its owner and drove them away on the road. One witness, (without being asked) volunteered as he was leaving the witness stand, that at one time there were as many as 200 quarry workers (without saying when or for how long). The lower road was used for ingress and egress to the quarry between 1915 and 1920. In 1929 the (upper) Quarry Road did not exist, but the lower

1. Petersen v. Combe, 29 Utah 2d 376, 438 P.2d 545 (1968).

2. Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176 (1961).

road was there. The railroad moved out between 1924 and 1926. The lower road was used by one Condas in 1927. In 1926 there was ingress and egress on the lower road and there was a bunkhouse and repair shed at the time. One M said he had seen persons down "in here go squirrel hunting, fishing and things like that." One H said he used the road, and saw some cars parked along the road. One S said he saw the road used at times. Condas built a fence with a stock gate on the west of the property in 1929 to comply with homestead requirements. In 1934 a chain was placed across the upper or Quarry Road which was maintained until 1958 or 1959. At that time the chain was moved back. (Since then plaintiff claims there had been no restriction in travel on the upper road until defendants barricaded it in 1967 (for which contention plaintiffs fail to refer to any part of the record for substantiation). Between 1929 and now use of the lower road has declined and use of the upper road has increased. Sheep travel both roads.

From the facts abstracted above the plaintiffs say the trial court had to conclude that there was an uncontroverted continuous use by the general public for more than 10 years and that the facts related constitute such clear and convincing evidence that the trial court necessarily was supposed to have reached such results.

On the other hand, defendants say they disagree with plaintiffs' statement of facts, urging that, in violation of the rule on appellate review, the plaintiffs have recited the facts for the most part more favorable to themselves, the losers, a luxury not reserved to them[3] and in violation of the onus placed upon them to point up where the Findings of the court did not conform to believable evidence.[4] Defendants point out facts favorable to the judgment which they properly may do, and which they say are presumptively correct, and not shown to be in error by plaintiffs,—also accepted requirements on review. Here are the facts urged by defendants, all of which accurately are shown by evidence and testimony in the record, and much of which is found in the written Findings of the trial court:

In the complaint only the upper or Quarry Road was the one in issue. At the end of the case, plaintiffs were allowed to include the lower road over timely objection, whose existence was established as a wagon road from 1894 to 1898 terminating at the quarry during which time its only use was by the witness Snyder's family, and those connected with the quarry. There was no evidence as to its existence from 1898 to 1915. In 1915 the lower road existed up to the quarry, but not beyond. It

---

3. Park v. Alta Ditch & Canal Co., 23 Utah 2d 86, 458 P.2d 625 (1969).

4. Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176 (1961).

was washed out around the hill in the spring run-off and winter snows "kept it pretty well gutted with little trenches." Evidence of the existence of the road is unclear from 1915 to 1926, when its existence generally was established. When the Condas family went into the area (as prospective homesteaders) in 1925 or 1926, they bogged down in attempting to use the road. A creek alongside flooded the road half the time and the road was full of potholes, and use of the road was difficult because it was wet and marshy along the fence line. In 1929 a board gate was placed across the lower road by Condas which later was replaced with a steel wire fence, which was maintained until 1938 or 1939, obstructing traffic and for a time it was padlocked. A Snyder boy drove pigs on the road on one occasion. With this exception and the testimony as to occasioned squirrel hunters, fishermen, and the like, there is no evidence as to any user from 1898 to 1915. The last rock was moved from the quarry about 1920 and the road was used after 1932 only for sheep operations. From 1928 to 1931 the road was used by defendants' predecessors in their sheep operations, and they received their homestead patent in that year. The upper, or Quarry Road was concededly not a road until 1928 or 1929, two years before the Condas patent, and the plaintiffs also concede that from 1934 to 1959 a chain was in place across the road, and the trial

court found it was there from 1932 to 1967, and that a "Keep Out" sign was hung on it, and that periodically a large boulder blocked it, and only lessees of the quarry and their employees and defendants and their predecessors were allowed to use the road. At no time did the County or State ever repair or maintain the upper road, subject of the cause of action. The court further found that prior to 1931 use of the lower road was limited to intermittent private use of the quarry lessees and their employers, and by an occasional hunter or fisherman and by defendants' predecessors for sheep operations from 1928 to 1931, and thereafter by the latter in sheep operations and by a farmer immediately to the South, and that neither road was used during any period of time by the general public as a public thoroughfare, and that at all times both were used as private roadways.

◼◼ We believe there was ample evidence, competent and admissible, that supported the trial court (in which event we must affirm) that the presumption of its correctness was duly supported, that the plaintiffs did not point up where the findings were not supported by evidence, which they must, that plaintiffs' chose to recite evidence most favorable to its contention to the exclusion of other evidence favorable to defendants, which is not permissable on appellate review, and that in any event the evidence upon which they relied

was a stranger to the clear and convincing evidence demanded in a case like this, and we so hold.

We believe that Petersen v. Combe, 20 Utah 2d 376, 438 P.2d 545 (1968) and the cases cited therein, particularly the leading case of Morris v. Blunt, 49 Utah 243, 161 P.2d 1127 (1916), are dispositive of the instant case. See also the very recent case of Harding v. Bohman, 26 Utah 2d 439, 491 P.2d 233 (1971), this court.

This is a case bottomed on a "public thoroughfare" thesis and is not to be confused either with an "easement" or a "right of way" case.

CALLISTER, C. J., and TUCKETT and CROCKETT, JJ., concur.

ELLETT, Justice (dissenting):

I dissent.

A quarry company obtained a quitclaim deed to a road on November 6, 1891. A quarry was in operation by the company prior to 1894 when the superintendent of the quarry married a girl who lived nearby. Prior to the marriage the superintendent and workmen from the quarry with their musical instruments would come to the home of the bride-to-be on frequent occasions.

It is difficult to find witnesses who have knowledge of occurrences 80 years ago. However, the brother of the bride testified to the above, and it is without question that the quarry company operated a business employing approximately twenty employees from prior to 1894 up to 1898, when the quarry was taken over by another operator. In addition to the men working in the quarry, there were the superintendent and his wife and two Chinese cooks working in the boarding house.

The road in question was used to service the quarry and for the workmen to travel to and from it. Visitors to the quarry also used the road. One witness testified that he worked in the quarry during the year 1915. After the railroad tracks were removed, stone was hauled from the quarry by the use of trucks. The road and the railroad were side by side, and after the removal of the tracks a part of the roadbed was used for vehicular travel for the reason that it was higher and not subject to the boggy condition of the old road in wet weather.

Much testimony was directed to the facts of the case after October 23, 1931, the date patent was issued to a predecessor in interest of the defendants. In my opinion the only relevant testimony after patent is that which bears on the question of legal abandonment. That testimony shows that Summit County still receives Class B road money on the road. It receives money on .8 of a mile on the old road and .4 of a mile along the old railroad bed.

This case is concerned with the proposition of whether a road was established

across the defendants' land prior to the issuance of patent thereto. If it was, it is not important how extensively it was used or whether it was used at all afterwards so long as it was not legally abandoned.[1]

Section 2477, U. S. Revised Statutes, 43 U.S.C.A. § 932, in force after 1866 reads: "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

There was no time limit required by the Revised Statutes for establishing a highway, and so it would depend upon territorial or state statutes to determine whether or not a road had been established across public lands.[2] There was no statute in Utah regarding the establishment of highways prior to 1886, when Chapter 12 was enacted, reading:

> Sec. 2. . . . A highway shall be deemed and taken as dedicated and abandoned to the use of the public when it has been continuously and uninterruptedly used as a public thoroughfare for a period of ten years. [In substance, same as Sec. 27–12–89, U.C.A.1953, Replacement Vol. 3.]
>
> \* \* \* \* \* \*
>
> Sec. 6. A road not worked or used for a period of five years ceases to be a highway. [Eliminated by Chapter 142, Laws of Utah 1911.]

Sec. 1116, Ch. 1, Title 25, R.S.U.1898, provided:

> All highways once established must continue to be highways until abandoned by order of the board of county commissioners of the county in which they are situated, by operation of law, or by judgment of a court of competent jurisdiction; · . . . [Sec. 27–12–90, U.C.A. 1953, Replacement Vol. 3. has practically identical language.]

It thus appears that for more than ten years prior to the issuance of patent the old road was used to service the quarry. The burden would be upon the defendants to show that for a five-year period prior to 1911 after the road was established it was neither travelled nor worked, or that it had been legally abandoned. The defendants did neither, and so I think the road is still in existence.

The fact that the use of the road was over a part of the old adjoining railroad bed has no effect upon the existence of the road. In my opinion the plaintiffs did not need to amend their complaint at all. In the case of Sullivan et ux. v. Condas, 76 Utah 585, 595, 290 P. 954, 957 (1930), this court said:

> A point also is made of a change of the course of the road. Whatever change was made was slight and did not

---

1. Ball v. Stephens, 68 Cal.App.2d 843, 158 P.2d 207 (1945).

2. Wilson v. Williams, 43 N.M. 173, 87 P.2d 683 (1939); Ball v. Stephens, footnote 1, supra.

materially change or affect the general course of the highway or of its location nor break or change the continuity of travel or use. [Citation omitted.]

However, plaintiffs did amend and are in my opinion entitled to a decree determining that the lower road is a public highway.

I would reverse the judgment of the lower court and remand the matter for a determination of the boundaries of the lower road, together with the assessment of such damages, if any, as plaintiffs may have sustained by reason of defendants' interference, if any, with their right to use the road. I would award costs to the appellants.