273 P.2d 720

**THOMPSON et al.**

v.

**NELSON et al.**

No. 8090.

Supreme Court of Utah.

Aug. 26, 1954.

William E. Davis, Newell A. Call, Brigham City, John H. Snow, Salt Lake City, for appellants.

Walter G. Mann, O. Dee Lund, Brigham City, for respondents.

LARSON, District Judge.

In this case defendant, Call Enterprises, Inc., is appellant, and plaintiffs are respondents.

The action is by the Thompsons to quiet title to a building lot in the business district of Brigham City, Utah.

The property owned by appellants and also the property owned by respondents now abuts and at all times in question has had its west boundary on Main Street.

Ownership of the property in Thompsons is admitted, subject to a claim of an easement in appellant, 14 feet wide, across the east end of the property, which is 42 feet 5 inches wide.

Appellant claims (1) an easement by prescription; (2) that a public road exists over said 14 feet of the Thompson property; (3) that it has an implied right of way over said 14 feet.

The trial court entered a decree quieting title in the Thompsons against appellants and the defendants, Nelsons. The Nelsons do not appeal.

The J. W. Howard property, occupied by a hotel, adjoins the Thompson property on the north for 64 feet at the east end, and the Morgan Investment Company property adjoins the Howard property on the north 107 feet to Jail Alley, which is a public street extending from Main Street east along the north boundary of the Morgan Investment Company property, to the center of the block and on through to First East Street.

In 1870 one Willis H. Booth, acquired title to Lots 5 and 6 in Brigham City. These two lots contain about one acre and constitute the north west quarter of the City Block in which they are located.

In 1896 Booth conveyed 10 feet on the south Boundary of his said property to one, Gasberg, and this ten feet is now owned by appellant and is the north part of appellant's property upon which its theatre is located. Appellant owns an additional 35½ feet to the south of the Gasberg property, which it acquired through another chain of title, giving appellant a total frontage of 45½ feet on Main Street for its theatre building; Booth deeded an additional 25 feet adjoining this theatre property on the north to one Christiansen in 1903, which is now owned by appellant and is occupied by its Block Building, both parcels extending east to the center of the block. In 1906 Booth deeded another 16 feet adjoining the Block Building property on the north to John D. Peters and this property is now owned by the Nelson defendants.

Appellant contends that there is and for 55 years has been a well-traveled road 14 feet wide extending north and south along the west center line of the block starting at Jail Alley on the north and terminating at an old Ice House in the south east corner of appellant's theatre property.

It appears from the evidence and from appellant's brief that from the time of the above mentioned conveyance of 10 feet to Gasberg in 1896, Mr. Booth conveyed and leased various pieces of ground along Main Street on his Lots 5 and 6, for small business enterprises. He kept open and established, however, a 14 foot right of way from Jail Alley to the south, 44 feet along

the east center line of the block, for the use of his lessees and purchasers, and they were at all times permitted by him to travel over this right of way and over any of his property back of their small buildings, to Jail Alley. In 1917 Booth made his last will and provided for a 14 foot right of way along the east line of his property from Jail Alley to the Thompson property. In his will he also reserved a right of way on the east of his premises running diagonally west to the corner of what is known as the hotel barn. The evidence shows that this diagonal driveway would terminate on the north line of respondents' property with its east boundary some 42 feet west of the east center line of the block. Booth's last will was probated in 1918 and the above rights of way were decreed to his devisees in accordance with his will.

Extending north and south from Jail Alley along the west center line of the block to appellant's property there is and has been, since 1945, an oil surfaced road which crosses the Thompson property on its east 14 feet, and runs on to the south across the east end of the property owned by the defendants, Nelson, which is 16 feet wide, and on to the property immediately to the south belonging to appellant, which consists of the block building property 25 feet wide, and its theatre property 45 feet and 6 inches wide. The property on Main Street is now closed with buildings so that appellant has no access to the back of its buildings for vehicular traffic, and appellant cannot now enter to the back of its buildings with vehicles except across the 14 foot right of way claimed across the Thompson property, since the property to its south is privately owned and there is no road or right of way to the street on the south, and appellant is also closed off with private property on its east boundary.

Appellant has no conveyance of any right of way to the rear of its buildings.

Uncontradicted evidence shows that in 1912, or prior thereto, a brick barn and pigeon runs were built and existed on the Howard Hotel property directly across any road that may have run north and south through the center of the block, as contended by appellant. This barn abutted the east property line of the Howard property, was 22 feet 9 inches east and west, and 36 feet north and south. The barn was 14 feet north of the north line of the Thompson property and directly north of the property over which appellant claims an easement. At the same time, in 1912, or before, there existed on the south of said barn, an elaborate pigeon run, built to within a foot or two of the north end of the property over which appellant claims an easement by prescription.

These buildings interrupted the continued use of any driveway through the center of the block along the east center line.

There is no evidence of 20 years user by appellant or its predecessors prior to that date. The first interest acquired by appellant and its predecessors in its properties was in 1896.

The physical aspects of this situation made it impractical, if not impossible, to continue over the property appellant claims as an easement. Appellant and others would have to go to the west over property appellant does not claim in order to get around the barn and pigeon runs. The barn remained in place until late 1943 or early 1944.

Until 1937 the Booth property was largely open back of the buildings on Main Street to appellant's theatre building. None of the buildings extended into the back from Main Street far enough to prevent travel from Jail Alley to the back of any of the buildings on Main Street without going over the property over which appellant claims it has an easement. Convincing evidence indicates that all travel to 1937, from Jail Alley to the buildings back of Main Street on the quarter block first owned by Booth and to the east end of the property owned by appellant, was scattered and not over any direct or continuous route across the east 14 feet of the Thompson property.

The weight of the evidence indicates that from 1928 to 1934 the Thompson property and the Nelson property adjoining it to the south was under lease with options to purchase, to an automobile dealer who built a substantial fence along the north boundary of the Thompson property and to the corner of the Hotel Barn above mentioned and also along the south boundary of the Nelson property. He maintained locked gates during this period and the only travel across the Thompson property was with his permission. His gate on the Thompson property was considerably west of the property claimed by appellant as a right of way. Substantial evidence is to the effect that during the latter part of this period, from 1928 to 1934, the east end of the Thompson property was covered with trash and the bodies and parts of dismantled automobiles.

In 1936 and 1937 the Thompsons extended their building to the east nearly to the property claimed by appellant for a right of way. During excavation the east 14 feet of the Thompson property was covered with dirt and trash. When the Thompson building extension was completed in 1937, the east end of the Thompson property and the property to the Hotel Barn was cleared and any travel from that time was necessarily over the east end of the Thompson property and thence west around the Hotel Barn.

This action was commenced by the respondents, Thompsons, in 1953. The whole evidence in the case would well support a finding by the trial court that appellant did not, during any period of 20 years, continuously, uninterruptedly, or adversely travel over the east 14 feet of the Thompson property.

In 1944 the owner of the Howard Hotel property interested Brigham City in opening a public road from Jail Alley south through the center of the block to First South Street. The Hotel Barn was re-

moved and Brigham City in 1945, with the consent of the owners along the center line of the block from Jail Alley south, to and including appellant's theatre property, and with the understanding that the road would go through the center of the block to First South, cleared and oiled a road from Jail Alley to the back of appellant's theatre property across the east 14 feet of the Thompson property over which appellant claims there is a public road. The owner of property south of appellant's theatre property refused to grant a right of way through his property to First South Street and, so far as the evidence in this case shows, the public road project was abandoned with the oiled road extending from Jail Alley to the back of appellant's theatre building. If any right of way deeds were procured by Brigham City they were not recorded and nothing is claimed for them.

From the time the road was opened up in 1945 by the City it may be inferred from the evidence that anyone used the road who might have occasion to use it.

Our Utah Statute, Section 27–1–2, Utah Code Annotated 1953, provides:

"A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years."

■ We quote with approval the definition of "thoroughfare" from our case entitled, Morris v. Blunt, 49 Utah 243, 249, 161 P. 1127, 1131:

"A 'thoroughfare' is a place or way through which there is passing or travel. It becomes a 'public thoroughfare' when the public have a general right of passage. Under this statute the highway, even though it be over privately owned ground, will be deemed dedicated or abandoned to the public use when the public has continuously used it as a thoroughfare for a period of ten years, but such use must be by the public. Use under private right is not sufficient. If the thoroughfare is laid out or used as a private way, its use, however long, as a private way does not make it a public way; and the mere fact that the public also make use of it, without objection from the owner of the land, will not make it a public way. Before it becomes public in character the owner of the land must consent to the change. Elliott, Roads and Streets, No. 5."

■ The trial court correctly regarded the evidence as insufficient to establish use sufficient to meet the requirements of Section 27–1–2, Utah Code Annotated above quoted. The road entered from Jail Alley over a private right of way, reserved as such by the owner for more than 50 years. So far as we can determine from the evidence, the road terminated back of appellant's theatre on its private property. The road led to no place of public interest and ended in a cul-de-sac. The use made of the road was for delivering merchan-

dise and supplies and for parking to the rear of buildings on Main Street in connection with the few business houses on Main Street in the half block over which the road extends. All of the business houses except one owned by the Nelson defendants and two owned by appellant had a private, reserved, right of way to their respective properties.

"The mere use by the public of a private alley in common with the owners of the alley does not show a dedication thereof to public use, or vest any right in the public to the way." MacCorkle v. City of Charleston, 105 W.Va. 395, 142 S.E. 841, 58 A.L.R. 231 and Annotation.

No intent to dedicate the road to public use can be presumed under our statute since there was not ten years user after the road was opened up, and any intent of the respondents to dedicate the road to public use was conditioned on the road being completed through the block to a public highway on the north.

We conclude that the road was not a public highway.

■ With respect to appellant's claim to an implied easement, the essential elements, as set forth in 17 Am.Jur., p. 948, Sec. 34, are:

"1. A separation of title:

"2. Necessity that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; and

"3. Necessity that the easement be essential to the beneficial enjoyment of the land granted or retained."

The evidence shows that in 1900 and prior thereto, there was a large barn and corrals in the southeast corner of the Booth property. The barn was north of the Gasberg property, the north ten feet of which Gasberg purchased from Booth in 1896, and is now owned by appellant. The barn burned in 1900. Appellant's witnesses could not go to the Gasberg property along the claimed road until after the barn burned. It follows that there was no well-defined road to appellant's theatre property at time of severance.

The next conveyance made by Booth was the 25 foot Block Building property now owned by appellant. It was conveyed to one Christiansen, in 1903. Christiansen established a tailor shop about 15 feet wide and 30 feet deep on Main Street. There may have been an ice house on the southeast corner of appellant's theatre property in 1903. If there was it was used in connection with the Wilson Saloon directly to the west on Main Street. To the north of the ice house on the roadway claimed by appellant, were two hitching posts. The door to the ice house was at the west end. The Booth property to the north was open. There was another hitching post on the north line of the Gasberg property midway between the east line and Main Street.

Normal travel to the Gasberg property, as indicated by the evidence, would be from Jail Alley southwesterly to Gasberg's store on Main Street and to his living quarters and storehouse half way between Main Street and the roadway claimed by appellant.

The daughter of tailor Christiansen, who worked with him in 1909, 1910 and 1911, testified: "They cut across most anywhere there. They didn't go clear up against the fence."

There is no evidence in the record of any complaint by anyone because of the hotel barn being built across this claimed roadway in 1912 or before. The evidence in the case is wholly insufficient to convince us that any well-defined roadway to appellant's property existed at time of severance.

The trial court concluded, from all of the evidence, that appellant had no easement over respondents' property and entered decree quieting title in respondents.

The decision of the trial court is well supported by the evidence, and is by us affirmed.

Costs to respondents.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.

WOLFE, C. J., being disqualified, did not participate in the hearing of this cause.