332 P.2d 666

Meredith PAGE and Maurine S. Page, Plaintiffs and Respondents,

v.

FEDERAL SECURITY INSURANCE COMPANY, a Utah corporation, Defendant and Appellant.

No. 8815.

Supreme Court of Utah.

Nov. 25, 1958.

Cotro-Manes & Cotro-Manes, Salt Lake City, for appellant.

Romney, Boyer & Ronnow, Dan S. Bushnell, Salt Lake City, for respondents.

CROCKETT, Justice.

Plaintiffs as beneficiaries secured a jury verdict for $11,682, the face amount of an insurance policy on the life of their son, Alma M. Page. He was killed on August 19, 1956, at the Kennecott Copper Mine in Bingham Canyon, Utah. The defendant company had refused to pay the face amount of the policy, contending that Alma had exercised an option, as provided

by its terms, to take paid-up insurance which would amount to $1,443.

■ The policy on its face showed the obligation for the full face value and therefore constituted a prima facie case for the plaintiffs. This cast upon the defendant the burden of proof to show that the option had been exercised and the policy changed.

■ The question of importance is: viewing the whole evidence, can the jury be justified in refusing to find that Alma M. Page had exercised the option mentioned. The plaintiffs, having prevailed, are entitled to have the evidence, and every inference reasonably to be derived therefrom, viewed in the light most favorable to them.[1]

The policy was originally taken out December 15, 1950, by Alma's father, Meredith Page, who also paid the premiums on it. The company's contention that it was converted to paid-up insurance was grounded upon certain dealings in the summer of 1955. Alma had married Ruth Jensen, a recent immigrant from Denmark, the previous year, 1954. She was called as a witness for the company and it relies heavily upon her testimony, asserting that she is a disinterested witness. She said that in the summer of 1955 she and Alma went to defendant's office and talked to Mr. Erich Olschewski (then Assistant Secretary, now Vice President) about converting the policy to a reduced amount of paid-up insurance, apparently to avoid the payment of further premiums. He quite naturally encouraged them to continue with the policy. After this conversation he sent a letter indicating the options in the policy, one of which was that of paid-up insurance. Ruth's recollection was that after thinking the matter over, they decided to take the paid-up insurance; that they then took the policy to the office and so informed Mr. Olschewski, leaving the policy with him. The latter amplifies her testimony, stating that there was a definite decision to convert to paid-up insurance; that he prepared an endorsement or "rider" specifying the change in the policy together with a letter of explanation. Merle Thomas, his secretary, (now his wife) corroborates this and that she attached the rider to the policy and mailed it to Alma Page. A carbon copy of the letter was introduced but the defendant did not produce a copy of the endorsement. The wife, Ruth, said she recalled receiving the policy, but as to the letter and the "rider" her memory was hazy. She had the impression that some other document or documents may have been with the policy.

Defendant makes a further point relating to the dividends on the policy, which prior to 1955 had been in excess of $20 a year, but for that year was only $4.75.

1. Bodon v. Suhrmann, 8 Utah 2d 42, 327 P.2d 826.

They aver that the fact that Alma Page accepted and cashed the check indicates that he knew of the reduction in the amount of the policy and acquiesced in it.

In opposition to the above evidence, the plaintiffs point to a number of facts as persuasive of their contention that no such option was ever exercised. The most important of these is that although the defendant claims it had possession of the policy, there was no change of any kind on it, nor any notation referring to any such change, to alert anyone concerned that the original policy had been modified. The second is that there is no evidence of any writing signed by Alma Page indicating a request for, or approval of, the claimed change in the policy. Also significant is the fact that the company did not find in its records the alleged rider, nor any carbon copy thereof.

There is also some negative evidence which requires visual inspection of the policy itself to appreciate. The sheets of paper comprising the policy and incidental documents are held together at the top by three machined eyelets, closely riveted together. Mrs. Olschewski testified that she attached the rider to the policy by the eyelets. Plaintiffs argue convincingly that this could not have been done without disturbing these eyelets; nor could any rider have been attached to the policy by them, or even in any similar manner, and leave it in its present undisturbed condition. Examination fails to show any indication that the eyelets had been disturbed, or that anything had been attached to the policy. Further, in accord with plaintiffs' theory is the testimony of Meredith Page: that after he took out the policy he kept it in his own safe, to which his son did not know the combination, and that it had never been out of his possession.

Another aspect of the evidence tending to support plaintiffs' position comes from the records of the Lincoln National Life Insurance Company, which acted as reinsurer of defendant's policies in amounts exceeding $1,000. Defendant claimed that this company was informed of the conversion of the Page policy. A Mr. Barnett of that company was subpoenaed to bring its records. He indicated that his company had not received any such notice, but had been advised that the policy was lapsed on November 19, 1956. This was obviously inaccurate because enough premiums had been paid in to carry the full policy until beyond the date of Alma Page's death.

The records of the defendant company itself seem to have been something less than clear that the policy had been reduced. Meredith Page further testified that after Alma's death he telephoned the defendant's office and the person answering for the company, upon being advised of Alma's death, took several minutes to check into

the matter and told·him that according to their records he and his wife as beneficiaries, were entitled to the full face amount, of the policy, minus a $400 loan. It was some days later in a conversation with Mr. Olschewski that the latter first told him that the company had made a mistake; that they would see if their re-insurance company would pay the policy and that he would "get them to pay it if it hadn't been terminated."

It is to be kept in mind that we are not here concerned with whether the defendant's evidence was sufficient that the jury could have found that it met its burden of proving that Alma Page had exercised the option for paid-up insurance. Undoubtedly it would support such a finding. Our problem is whether the evidence makes mandatory such a finding as a matter of law. It is suggested on behalf of the plaintiffs, as the rule is often stated, that if there is any reasonable basis in the evidence upon which the jury could find that the option had not been exercised, the verdict must stand. However, this does not state the rule with complete accuracy. This distinction should be noted: it is not necessary that the evidence justify any affirmative finding to that effect. It is more accurate to say: if the evidence is such that the jury acting fairly and reasonably, could remain unconvinced that the option had been exercised, the verdict must be affirmed.[2]

The merit of defendant's challenge to this verdict devolves upon the credit to be given the testimony of the witnesses. The traditional and well established rule is: the fact trier, in this instance the jury, has the prerogative of judging credibility of witnesses and the weight to be given the evidence.[3] This admittedly would not go so far as to permit it to arbitrarily disregard credible uncontradicted evidence. But wherever there is a basis from which bias, prejudice or self-interest may be seen, or there is anything incredible in the testimony, the jury is not obliged to accept it.[4]

There is a basis upon which all of the principal witnesses here may be deemed to have an interest. That of the plaintiffs, Mr. and Mrs. Page, and of Mr. and Mrs. Olschewski, representing the company, is obvious. As to Ruth Jensen Page, the young wife of Alma Page: she was not a beneficiary of this substantial insurance policy and it would not be unreasonable suspect that she was not sympathetic to the efforts of her in-laws to get her husband's insurance. Further, she was a recent immigrant and admitted that she

---

2. Patterson v. Blair, 123 Utah 216, 257 P. 2d 944.

3. Byram v. Payne, 58 Utah 536, 201 P. 401, 18 A.L.R. 1110; 58 Am.Jur. 489.

4. See statement in Jones v. California Packing Corporation, 121 Utah 612, 244 P.2d 640, and authorities therein cited.

experienced some difficulty in understanding about this insurance business, which she left to her husband. It is also significant that, according to her testimony, she received the policy in the mail after these talks, and therefore would have had it in her possession. Yet after her husband's death she produced only the first letter describing the options under it, but she did not have the policy, nor did she have either the rider or the accompanying letter, which the company claimed were sent. Such documents, particularly the policy, are important enough that if they came into her possession it might well be expected that she would have taken care of them.

In the light of the principles hereinabove discussed we do not believe that the evidence compels a finding that the option to convert the policy to a reduced amount of paid-up insurance was exercised, but on the contrary is such that the jury acting fairly and reasonably could remain unconvinced that the defendant company had met its burden of proving that this had been done. Such being the jury's prerogative, its verdict will not be disturbed.

Affirmed. Costs to plaintiffs.

McDONOUGH, C. J., and WADE, J., concur.

WORTHEN and HENRIOD, JJ., concur in the result.