391 P.2d 426

Edward L. GILLMOR, Edward Leslie Gillmor and C. Francis Gillmor, Jr., and the Island Ranching Company, formerly known as Island Improvement Company, Plaintiffs and Respondents,

v.

Elwood B. CARTER, d/b/a Service Salt Company, Defendant and Appellant.

No. 9993.

Supreme Court of Utah.

April 27, 1964.

6. 35-1-85, U.C.A.1953 and annotations, thereunder.

William H. Henderson, Salt Lake City, for appellant.

Allen H. Tibbals, Salt Lake City, for respondents.

WADE, Justice.

This appeal is by defendant Elwood B. Carter, doing business as Service Salt Company, from a summary judgment wherein he was enjoined from using a road, which traversed property owned by the Gillmors, for the purpose of hauling salt or other minerals from Great Salt Lake. The court reserved for trial, however, the question of whether appellant had obtained a prescriptive right to personally travel over this road by jeep, passenger car or panel truck as a means of access to Great Salt Lake for purposes of exploration, and also the question of damages, if any, sustained by respondents as the result of the use of such road by appellant.

The judgment was based on the pleadings, deposition of appellant Carter, and affidavits. From these it appears that the road in question originates at the old Saltair Speedway and travels in a northerly direction across lands owned by the Gillmors through Sections 27, 22 and 15; thence in a general northwesterly direction through a portion of Section 15 through Section 16; thence in a general westerly direction crosses Sections 17 and 18 in proceeding to the shore of Great Salt Lake. The Gillmors own Sections 27, 22, 15, 16 and 18. These sections are in Township 1 North, Range 2 West, Salt Lake Meridian in Salt Lake County, Utah. The terminus of the road is Antelope Island, which is owned by respondent Island Ranching Company. By their complaint, respondents claimed this road to be a private road, whereas appellant Carter in his answer and counterclaim averred the road

was a public road and had been such for more than 30 years before the commencement of this action. He also averred that he had acquired a prescriptive right by using said road openly and freely for a period of over 30 years. Appellant Carter asked that he be awarded damages by reason of respondents' closing of said roadway, thus preventing its use by him for hauling salt.

From appellant Carter's deposition it appears that appellant had used the road in question since 1934 to gain access to the Great Salt Lake for prospecting and mining purposes. His use of the road for the purpose of hauling salt, however, commenced only approximately a year and a half before the commencement of this suit. Appellant had always thought this road to be a public road, having seen Salt Lake County employees and equipment doing work on it over the period of years in which he used it. This impression was strengthened by statements of Salt Lake County employees who told him it was a county road, and also by the statement of a Salt Lake County Surveyor that the road appeared in a map which had been hanging in the Surveyor's Office for 20 or 25 years, and that the road would not have been shown in that map if it were not a county road. Appellant admitted there were gates located on the road near the Gillmors' sheds, and that he had complied with the request of signs posted to "Please Close The Gates." Appellant said he did this because he had been a stockman and knew that stock could get out if gates were not kept closed. Appellant said he had used the road as a matter of right and had never been stopped from using it, nor had he asked permission to do so until just prior to the commencement of this action.

Respondents, in support of their motion for summary judgment, filed affidavits in which they averred that they were the owners of most of the land over which the road traverses, and that the Gillmors had established that road for their use in their sheep and cattle business. That at all times since its establishment they had controlled its use through the placement of large gates and signs at strategic points, indicating the use of said road was barred to the use of anyone without their permission, and that if use had been made by others, it was done without their knowledge and they were trespassers.

From answers to interrogatories propounded by appellant it appears that the Gillmors were claiming this road to be a private road as early as 1921, as evidenced by a written agreement which was entered into between the Gillmors and duck clubs in that year, giving the duck clubs permission to maintain a road over the Gillmors' land. Further evidence of such claims can be found in litigation between the Gillmors and others in which a judgment was entered as early as 1937 that the Gillmors were claiming the road to be a private road.

■ A summary judgment should only be granted if from the pleadings, depositions, admissions and affidavits, if any, it is shown without dispute that the party seeking the summary judgment is entitled to prevail.[1]

By appellant's own admission in his deposition he had used the road for hauling salt only approximately one and one-half years before this action was started. He therefore could not have acquired a prescriptive right to the use of the road for such purpose. His use of the road for access to Great Salt Lake for exploring purposes did not include use of trucks for hauling heavy tonnage. The question of whether appellant had acquired a prescriptive right to use the road for access to Great Salt Lake for exploration purposes was reserved for trial. Appellant's claim to the right to use the road for hauling salt and other minerals in large quantities under the facts disclosed here would depend upon whether it could possibly be found that the road had been "used as a public thoroughfare for a periof of ten years."

■ Nothing in appellant's allegations, deposition and affidavits controverts respondent, Edward L. Gillmor's affidavit to the effect that he and a deceased brother as the owners of most of the land over which the road traverses established the road for their own purposes, and that they had tried to control its use to those persons to whom they granted permission by placing large gates and signs at strategic points to bar its use by those not granted permission. In fact, appellant admits that during the various times he has used the road he has seen such gates and signs. Appellant's knowledge of what he thought was a use of the road by the general public appears to be confined to a period of about 30 years before the commencement of this action. For at least more than 40 years before this action was commenced, the Gillmors had entered into an agreement with duck clubs granting permission to use the road and had since that time litigated a number of lawsuits in defense of their claim that the road was a private road. Such actions by owners who have established a road over their own lands, even though a portion of the road traverses land not owned by them is inconsistent with a 10-year use of this road as a public thoroughfare. We said in Morris v. Blunt, there must be evidence of intent by the owner to dedicate a road to a public use and an acceptance by the public.[2] Such intent may be inferred from declarations,

1. Dupler v. Yates, 10 Utah 2d 251, 351 P. 2d 624; Continental Bank & Trust Co. v. Cunningham, 10 Utah 2d 329, 353 P.2d 168; and Christensen v. Financial Service Co., 14 Utah 2d 101, 377 P.2d 1010; Bullock v. Deseret Dodge Truck Center

Inc.. 11 Utah 2d 1, 354 P.2d 559.
2. Morris v. Blunt, 49 Utah 243, 161 P. 1127. See also Hall et al. v. North Ogden City et al., 109 Utah 325 (on rehearing); 175 P.2d 703 (on rehearing).

acts or circumstances and user by the general public.[3] In Morris v. Blunt, this court stated on page 251 of the Utah reporter, page 1131 of 161 P.:

"Compiled Laws of Utah 1907 § 1115,[4] provides:

" 'A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years.'

"A 'thoroughfare' is a place or way through which there is passing or travel. It becomes a 'public thoroughfare' when the public have a general right of passage. Under this statute the highway, even though it be over privately owned ground, will be deemed dedicated or abandoned to the public use when the public has continuously used it as a thoroughfare for a period of ten years, but such use must be by the public. Use under private right is not sufficient. If the thoroughfare is laid out or used as a private way, its use, however long, as a private way, does not make it a public way; * * *. Elliott, Roads and Streets, § 5."

■ In view of the uncontroverted facts that the Gillmors have always, since the inception of the road, acted in a manner inconsistent with the allowance of the use of their private road as a public thoroughfare or an intent to dedicate or abandon it as a public highway, and since there appears nothing in the circumstances of the use claimed to have been made by persons using the road which is sufficient to overcome the acts and declared intent of the owners ever since the inception of the road not to dedicate it as a public highway but rather to retain it as a private road, the court did not err in granting a summary judgment enjoining its use by appellant for hauling salt in heavy tonnages. By appellant's own admission such a burden had been placed by him upon that road for only a period of about one and one-half years before the commencement of this action which, of course, is insufficient upon which to base a right by prescriptive use.[5]

We have considered respondents' contention that the court erred in reserving for trial the question of whether appellant had acquired a prescriptive right to use the road for other purposes and find no merit to it.

Affirmed. Costs to respondents.

HENRIOD, C. J., and McDONOUGH and CALLISTER, JJ., concur.

CROCKETT, J., does not participate.

---

3. Boyer v. Clark, 7 Utah 2d 395, 326 P. 2d 107.

4. Now Sec. 27–12–89, U.C.A.1953 (1963 Pocket Supplement).

5. Morris v. Blunt, 49 Utah 243, 161 P. 1127.