417 P.2d 646

Earl BONNER, Plaintiff and Appellant,

v.

George W. SUDBURY and Mrs. George W. Sudbury, his wife, and Beth L. Davis, Defendants, Third-Party Plaintiffs and Respondents,

v.

SALT LAKE CITY CORPORATION, Mrs. John J. Hunt, Zion's Security Corporation, Vere L. Mathews and Shirley Seeholzer, Third-Party Defendants and Respondents.

No. 10298.

Supreme Court of Utah.

July 28, 1966.

12. Holland v. Brown, supra note 1; Gordon v. Provo City, 15 Utah 2d 287, 391 P.2d 430.

Leland S. McCullough, Salt Lake City, for appellant.

Galen Ross, Salt Lake City, for respondents.

CROCKETT, Justice:

Plaintiff sued to prevent the defendants from using the dead end street, called McClelland Street, which runs north from 1041 East Sixth South in Salt Lake City. After a trial the District Court found that it had been used as a public street for more than the ten years and hence under Sec. 27–12–89, U.C.A.1953, is deemed to have been dedicated to public use and gave judg-

ment for the defendants.[1] Plaintiff appeals. .

The street, or perhaps more properly called an alley, is only ten feet wide. From the point at 1041 East Sixth South it runs north 165 feet, then makes a right angle to the west for 47 feet, and thence again north 150 feet, where it dead ends. Defendants Sudbury and Davis own homes facing on Sixth South on opposite sides of this street and use it to get to the rear of their homes. Plaintiff owns the fee title to the street in that area. He and others who own property to the rear, and who own easements therein, use it as a means of access to their homes.

■ Plaintiff challenges the finding that the street in question is a public street as not being supported by the evidence. In considering that problem it is our duty to analyze the evidence and whatever reasonable inferences may be drawn therefrom in the light most favorable to the findings and judgment.[2]

These facts emerge as tending to do so: the official records of the city show the area in dispute to have been platted as a public street since at least 1915; the City has paved it; and has placed and maintained a regular public street sign at its entrance from Sixth South. It is not shown on the plat nor the assessor's roll as belonging to the plaintiff, and the records show that he has not paid any taxes on it for at least 25 years. A number of witnesses who lived there stated that they have over a period of years seen postmen, milk trucks, delivery trucks, children going to and from school, and various others using the street. Although there has never been much traffic there due to the fact that it is a narrow dead end alley, the fair inference from the evidence is that it has been used by anyone who so desired; and that there has been no substantial interference therewith for at least 25 years and in fact "since the memory of man runneth not to the contrary."

In addition to the evidence just recited, there are direct statements in the testimony relating to the public use of the street.

Mr. Guy Kidder, who lived across the street:

Q. From your house or from your knowledge in the neighborhood, have you had occasion *to see children or the general public using McClelland Street?*

A. Yes.

\*　\*　\*　\*　\*　\*

The defendant, George W. Sudbury:

Q. Now, have you had occasion *to see the general public using McClelland Street?*

---

1. That statute provides that "A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years."

2. Staley v. Grant, 2 Utah 2d 421, 276 P.2d 489.

A. On many occasions. (Emphasis added.)

\* \* \* \* \* \*

 We do not burden this opinion with more extensive quotation of the testimony. However, in fairness it should be stated that upon further examination, the witnesses just referred to particularized as to the classes of persons just mentioned above who used the street. Yet, in our judgment it can be said advisedly that the trial court could reasonably regard their further answers as not contradictory of, but rather as consistent with their statements that the public used it. The testimony of one credible witness, if believed by the court or jury, is sufficient upon which to base a finding of fact. In the face of the testimony just quoted above, and especially considered in conjunction with the facts recited herein, we are at a loss to understand how it can reasonably be said that there is no substantial evidence to support the findings and judgment.

 In connection with this review we deem it appropriate to note our agreement that the dedication of one's property to a public use should not be regarded lightly and that certain principles should be adhered to. The presumption is in favor of the property owner; and the burden of

establishing public use for the required period of time is on those claiming it.[3] The mere fact that members of the public may use a private driveway or alley without interference will not necessarily establish it as a public way; nor will the fact that it was shown on the public records to be a public street; nor even that it had been paved and sign-posted as a public street by the City. We have no doubt that each of those various facts, if considered separately, could be rationalized as not proving a public street. But all of the facts should be considered together; and where there is dispute about whether a public use is established, determination of the facts and resolution of the issue is primarily the responsibility of the trial court.[4] Resolution of such an issue cannot rest entirely upon what the owner says was his intent.[5] In case controversy arises he can always avow that his intent was in accord with his interest.

When the various favorable aspects of the evidence are so considered in the aggregate, with the purpose in mind of sustaining the findings and judgment, the situation disclosed impresses us as being about as substantial in support of them as ever will be found where there is any controversy at all.

3. See Harkness v. Woodmansee, 7 Utah, 227, 26 P. 291.

4. See Thompson, Real Property, Vol. 2, § 525.

5. We so state notwithstanding statement in Morris v. Blunt, et al., 49 Utah 243, 161 P. 1127.

**144**

In conformity with the time-honored rules concerning the prerogatives of the trial court and the solidarity of the judgment, it is affirmed.[6]

McDONOUGH and TUCKETT, JJ., concur.

CALLISTER, Justice (dissenting).

The majority opinion, in this case, condones the violation of the constitutional inhibition against taking private property for public use without just compensation to the owner. This, in defiance of its statement that "dedication of one's property to a public use should not be lightly regarded."

Properly, the majority view the evidence in the light most favorable to the defendants. However, this does not mean that this court can or should ignore the other side of the coin.

Plaintiff's evidence was to the effect that, in the past, there had been fences on both sides of the alley which were maintained by himself and the people living in the rear. Signs had been erected, and posts implanted, designating the alley as "Private." Said signs and posts were torn down or removed. Plaintiff had, on more than one occasion, requested Sudbury to cease using the alley.

The sole issue of this case is whether the character of the evidence supports, as a matter of law, the trial court's decision that the alley had been dedicated as a public street under the provisions of Section 27–12–89, U.C.A.1953, Supp.1963. This statute provides:

"A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a *public thoroughfare* for a period of ten years." (Emphasis added.)

Under this statute, public rights may be acquired upon a theory of dedication presumed from continual use. In Morris v. Blunt,[1] this court observed that if the public use were sufficient to constitute an acceptance and *the owner had in fact intended to dedicate*, then the dedication would be complete. However, the court noted that in making such a determination the people who used the way must be considered. "Did their traveling upon it constitute a use by the public?" As an example, the court cited the group who had an express grant of right of way for ingress and egress and stated that neither they nor their visitors were traveling the road by reason of its public character but, rather, by virtue of the express grant in their deeds. It further observed:

"A 'thoroughfare' is a place or way through which there is passing or travel.

6. See Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176.

1. 49 Utah 243, 161 P. 1127 (1916).

It becomes a 'public thoroughfare' when the public have a general right of passage. Under this statute the highway, even though it be over privately owned ground, will be deemed dedicated or abandoned to the public use when the public has continuously used it as a *thoroughfare* for a period of 10 years, but such use must be by the public. *Use under private right is not sufficient.* If the *thoroughfare* is laid out or used as a private way, its use, however long, as a private way, does not make it a public way; and the mere fact that the public also make use of it, without objection from the owner of the land, will not make it a public way. Before it becomes public in character the owner of the land must consent to the change. \* \* \*" (Emphasis added.)

Under the facts of the instant case, it appears the great majority of the people traveling the alley did not do so by reason of its public character but rather as a matter of right under the express grant in their deeds or as licensees or invitees of the people with this right, i. e., milkmen, paper boys, delivery men, etc.[2] The occasional use by defendants, the use by school children as a short-cut, and the occasional use by persons under the mistaken idea that it was a through street do not change the use from private to public.

A similar fact situation was presented to this court in Thompson v. Nelson,[3] wherein a decision of the trial court that the evidence was insufficient to establish a dedication to public use was affirmed. The court stated:

"\* \* \* [t]he road entered from Jail Alley over a private right of way, reserved as such by the owner for more than 50 years. So far as we can determine from the evidence, the road terminated back of appellant's theater on its private property. *The road led to no place of public interest and ended in a cul-de-sac.* The use made of the road was for delivering merchandise and supplies and for parking to the rear of buildings on Main Street in connection with the few business houses on Main Street in the half block over which the road extends. All of the business houses except one owned by the Nelson defendants and two owned by appellant had a private, reserved, right of way to their respective properties.

'*The mere use by the public of a private alley in common with the owners of the alley does not show a dedication thereof to public use, or vest any right in the public to the way.*' MacCorkle v. City of Charleston, 105 W.Va. 395, 142 S.E. 841, 58 A.L.R. 231 and Annotation." (Emphasis added.)

2. Brown v. Oregon Short Line R. R., 36 Utah 257, 102 P. 740, 24 L.R.A.,N.S., 86 (1909).

3. 2 Utah 2d 340, 273 P.2d 720 (1954).

146

The evidence which the trial judge recited in his findings of fact must be analyzed to determine if it were of such a nature as to invoke the application of Section 27–12–89, U.C.A.1953, Supp.1963.

There was testimony that the City Attorney had assured defendant that the area was a public street. The city had also improved the alley by paving a *portion* of it. In the Thompson case,[4] the city had also paved the area, but this factor was insufficient to prove the public use. In City of Chicago v. Borden,[5] the city claimed that it had cleaned and graded the alley, which it asserted indicated the user of the alley by the city as a public alley. The court responded:

"* * * *if the owners had made declarations or done acts indicating an intention to dedicate the property,* then the circumstances referred to would be important, as showing whether or not the city accepted such dedication, or any offer of the same. But, as there is no evidence in the record of any user of the alley by the city or by the public for the purposes of passage and repassage, these circumstances, unaccompanied by such user, are not sufficient to establish ownership of the alley in the city, or to fix its character as a public alley." (Emphasis added.)

In Gilmor v. Carter,[6] this court stated: "* * * Appellant had always thought this road to be a public road, having seen Salt Lake County employees and equipment doing work on it over the period of years in which he used it. This impression was strengthened by statements of Salt Lake County employees who told him it was a county road, and also by the statement of a Salt Lake County Surveyor that the road appeared in a map which had been hanging in the Surveyor's Office for 20 or 25 years, and that the road would not have been shown in that map if it were not a county road."

Regardless of the foregoing evidence, this court held that where the owners of the land had established a road for their own purposes and attempted to control its use, their actions were inconsistent with ten years' use of a road as a public thoroughfare. The instant case appears to fall within this rule, for there is evidence to support the fact that the plaintiff and the people with a right of way had attempted to control the use of the alley by their maintenance thereof and protestations whenever Davis or Sudbury used the area.

In regard to the erection of the street sign, there was uncontroverted testimony that the city initiated its removal because of the private character of the passageway but upon the request of Mrs. Bonner, the

4. See Note 3, supra.
5. 190 Ill. 430, 60 N.E. 915, 922 (1901).
6. 15 Utah 2d 280, 391 P.2d 426 (1964).

city permitted the sign to remain for the purpose of identification.

In regard to Exhibit 11, which was entitled an "Official Survey Plat of City Blocks of Salt Lake City Corporation," and dated around 1915, the testimony of an engineer for the City Engineering Department cannot be ignored. He testified that Exhibit 11 contained not only public streets, but private streets and private rights of way.

The instant case is controlled by the ruling in Hall v. North Ogden City,[7] that the mere fact that a city prepares an official map showing the existence of a street does not prove that the owner had an intention to dedicate the street platted therein to the public use.

We must consider the significance of the fact that no taxes had been paid on the area. The assistant supervisor in the Plat Department of the County Assessor's Office, testified that the policy of the department was not to assess rights of way if several persons have access. The reasoning of the Borden case,[8] has specific application to the instant situation; the court stated:

" '* * * The assessment or nonassessment of the premises we do not regard as material, as the assessing officers do not represent the public for the acceptance of dedications.' * * * The easement which the adjoining owners had in this alley could not be taken away from them either by the act of the assessor in not assessing the alley, or by the act of the owner of the ground embraced in the alley in not causing it to be assessed. * * *

"Another circumstance, urged by counsel for appellant in favor of the public character of the alley is the fact that it was not only never assessed, but that no taxes were ever paid upon it, and it is claimed that these facts show it to have been the intention of the parties that it should be a public alley. The city or the public cannot become entitled to a man's property because no taxes are assessed against it, and because, by reason of such nonassessment, no taxes are paid by the owner. If this alley were subject to taxation, it was the duty of the public officers to assess the same, and enforce the payment of taxes upon it."

The majority opinion quotes portions of the testimony of the defendant Sudbury and the witness Kidder. It is submitted that the quoted testimony is self-serving and a legal conclusion of laymen. The majority "do not burden this opinion with more extensive quotation of the testimony." This writer deems it appropriate to quote more extensively the testimony of these two witnesses—it isn't very long.

7. 109 Utah 325, 175 P.2d 703 (1946).

8. Note 5, supra.

Mr. Guy Kidder, who lived across the street:

Q. From your house or from your knowledge in the neighborhood have you had occasion *to see children or the general public using McClelland Street?*

A. Yes.[9]

Q. Would you describe some of these instances?

A. Well, there are a lot of people live back there that use it. I don't know all of them but there are four or five families and I think one family has at least two cars and possibly three. The milk trucks go in there, mail trucks, delivery trucks of various nature and quite frequently there is a large truck goes in there with boxes of some kind, I don't know what they are.

Mr. Ross: I have no further examination.

The defendant, George W. Sudbury:

Q. Now, have you had occasion *to see the general public using McClelland Street?*

A. On many occasions.[10]

Q. And would you explain how the general public has used McClelland?

A. Well, the people drive in there looking for certain addresses and they stop when they can't find it. They stop and ask either myself or my wife, who works a lot in the backyard, where that address is. The children go through there all the time from 10th East to 5th South, going to school. People coming in bringing sewing and other jobs of that kind to Mrs. McKinney.

Mr. Ross: I have no further questions of this witness.

·It is submitted that this additional testimony completely destroys the legal conclusions as to general public use given by these witnesses, which they should not have been allowed to give in the first place.

Except for the rather odd statement that "Resolution of such an issue cannot rest entirely upon what the owner says was his intent," [11] the majority make no reference to the owner's intent. In Morris v. Blunt,[12] this court stated:

"A dedication rests primarily in the intent of the owner. There must be a concession intentionally made by him, *which may be proved by declarations or by acts, or may be inferred from circum-*

9. The quote in the main opinion ends here.

10. The quote in the majority opinion ends here.

11. I use the adjective "odd" because there was substantial evidence of facts and

circumstances negating any intent of the owner to dedicate the alley as a public highway.

12. Supra, n. 1.

*stances.* No form or ceremony is necessary. It must, however, appear that he knew of the use by the public, and intended to grant the right of way to the public. * * * "[13] (Emphasis added.)

Of extreme importance to the determination of this case is the fact that the people owning property to the rear of the alley have been granted express rights of way. in their title deeds. The plaintiff *had* to keep the alley open. He could not close it without violating the rights of the easement owners. In Tiffany, Real Property, 3d Ed. Vol. 4, at page 341, it is stated:

> "When the owner of land leaves it open in whole or in part as a means of access to his own premises, the fact that he allows the public generally to use it for purposes of passage is but slight, if any, evidence of an intention to dedicate, since he could not conveniently leave it open to those persons coming to his own premises and close it as against all others * * *"

The McClelland Street under consideration is a ten-foot wide cul-de-sac. It leads to no place of public interest. In an early California case,[14] the Supreme Court of that state observed:

> " * * * A cul-de-sac, such as the one here in question, is not a thoroughfare,

which is 'a passage through'; 'a passage from one street or opening to another' (Webster's Dictionary; Woodyer v. Hadden, 5 Taunt. 125, and Bateman v. Bluck, 14 Eng.Law & Equity Rep. 69). Whether such a cul-de-sac can be a public highway has been a mooted question. See the two English cases above cited, and the notes to Sheafe v. People, at page 51 of 29 Am.Rep. There are not many decisions on the subject. However, it may, perhaps, be correctly said that it is not a legal impossibility for a cul-de-sac, though not a thoroughfare, to be a public highway [15]; *but in such case a verdict or finding that such a choked-up and abortive passageway is a public highway should be supported by very clear and satisfactory evidence * * *."* (Emphasis added.)

One final observation: the plaintiff Bonner owned the underlying fee to the alley. Had the owners of the rights of way abandoned them, the alley would have been his unencumbered, to close or do with what he pleased. Now, however, the majority of this court, supported by the flimsiest of evidence, takes this away from him without any compensation therefor. If, in the future, the City should abandon this public highway,[16] the then abutting property own-

13. This case has been cited, with approval, by this court in numerous subsequent cases.

14. Gilfillan v. Shattuck, 142 Cal. 27, 75 P. 646 (1904).

15. The writer finds it rather difficult to make even this slight concession in view of the wording of our statute.

16. A very likely possibility.

ers would take title to the middle of the highway—without the necessity of giving any compensation.

Those interested enough should take a personal view [17] of the public highway known as McClelland Street. A word of caution, however,—don't drive your automobile on it. The highway doesn't take you any place and you might not be able to get your car out.

HENRIOD, Chief Justice (dissenting).

I dissent, agreeing with everything stated in Mr. Justice Callister's dissenting opinion.

The main opinion completely ignores property rights on the flimsiest kind of evidence. It has the effect of giving a recalcitrant property owner a private right of eminent domain by the simple device of testifying to an inadmissible conclusion that he had seen the general public (?) use this narrow, almost tree-canopied alley. He was bolstered by a friend in the neighborhood, on an entirely different street frontage who must have acquired a bad case of eyestrain to see the general public using this tenfoot alley having the crooked appearance of a dog's hind leg.

The subjoined photo reflects the nature and extent of this alley which the main opinion approves as a "public thorough-fare." [1] One cannot see but part of the alley since it "meanders" by way of two separate right angle crooks, ending abruptly in a dead end only 125 yards from its entrance. The subjoined replica [2] of the *official* plat covering this alley shows in the middle thereof the letters "R of W," which any abstracter knows means "Right of Way," which any title attorney knows means a "Private Way" and not a "Public Thoroughfare." This is the *official, approved* plat. The main opinion, in referring to city records, says that "the official records of the city show that the area in dispute to have been platted, as a public street." This statement appears to be quite inaccurate since there was no exhibit introduced to substantiate it. The only *official, approved plat* shows exactly the antithesis. The main opinion arrives at its unwarranted conclusion, apparently, by referring to a library index card [3] unauthenticated, unsignatured and unsealed in any way, that refers to location of streets, prepared by who knows whom,—perhaps a flunky, with loose fingers on a loose typewriter, but without any seal,—official recordation or authentication of any kind. This is Exhibit 12, pictured herein, the only evidence, highly inadmissible, to prove or tend to prove a public thoroughfare, upon which the main opinion hangs its hat, in saying that "the official record of the city shows that

---

17. Photographs were introduced into evidence.

1. Figure 1.
2. Figure 2.
3. Figure 3.

the area in dispute to have been *platted* as a public street." This court should respect the intelligence of a title examiner by not indulging such inaccuracy.

Figure 1

Figure 2

Figure 3

McCLELLAND STREET (Public)
south from 1040 Hollywood Ave., 1040 E 21st So. and 27th So. and north from 1041 E 6th So.

at 100 S is 1040 E St.

EXHIBIT *12*

CASE NO. *140410*

Now: Let's look at the main opinion some more. It admits that this "thoroughfare" was nothing but an alley,—crooked as a sidewinder, ending in a cul-de-sac, with no place else to go. It makes a point that plaintiff paid no taxes on this God forsaken trail as a reason for declaring it a "thoroughfare." This is strange and novel doctrine since it means that if I don't pay the taxes on my home for ten years, it is then open ground for the public, teenagers and a receptacle for beer bottles. It says some witnesses have seen postmen go up and down the alley. They are not the general public. They are postmen and invitees. It cites milkmen as using the alley. Same thing, and to classify them as even part of the "general public" is absurd. Same with delivery trucks. Same with children going to school. The "various others" are not specified in the main opinion,—and can't be. It is complete evasion to say, as does the main opinion that "We do not burden this opinion with more extensive quotation of the testimony,"—because it would be useless under the reasoning of the opinion which, in order to reach a desired result, apparently ignores property rights completely. It is most startling to observe that the main opinion sloughs the whole thing off by a generality that "when the various favorable aspects of the evidence are so considered in the aggregate * * * the situation impresses us as being about as substantial in support of them as ever will be found where there is any controversy at all." This is an ipse dixit understatement, since taking out the milkman, the deliveryman, the postman, kids going to school, no public record of a platted public thoroughfare or street, and the myopic, inadmissible evidence of a neighbor across the street (about 120 feet wide,—not on the alley), and the inadmissibility of a self-serving witness verbally wandering about without specificity about the "general public,"—there isn't any evidence left to show that this obscure alley is in any sense a thoroughfare.

The main opinion may cause concern to Salt Lake City, only a nominal party to this action, when the City learns that it may be required to pave and maintain this ten foot "thoroughfare" alley,—also to install street lighting,—also to have its garbage crews go into the now public thoroughfare to pick up the garbage instead of requiring the residents of property abutting the public thoroughfare to carry it to Sixth South, which they have been doing in the past. The City may now have an obligation to curb, gutter and sidewalk this public street. A three foot sidewalk on each side thereof would restrict the general public's ability to travel this public street to four feet,—a comfortable freeway for bicycles, skate-boards and wheelchairs, if there were no oncoming traffic,—in which event even a traffic semaphore installed by the City would not solve the traffic problem, except for ingress and egress for small children going to school.

This author knows this alley, tried to drive upon it, couldn't even get to the cul-de-sac, having some difficulty getting out of it in a compact Corvair.

The dictionaries say a public thoroughfare is something to let people go through,— not bat their heads against, as is the case here. In my opinion to dub this ten foot alley a public thoroughfare is to insult rabbits, dogs, small badgers and quail.

This case should be reversed, else people should keep the kids, the milkmen, the postmen and deliverymen out of their driveways.