438 P.2d 545

Vern H. PETERSEN and Georgia Petersen, husband and wife, Reed L. Petersen and Ethel L. Petersen, husband and wife, Plaintiffs and Respondents,

v.

Jule COMBE, Jr., and Jule Combe, Sr., Defendants and Appellants.

No. 11009.

Supreme Court of Utah.

March 6, 1968.

I. Gordon Huggins, Ogden, for defendants and appellants.

Keith E. Murray, Ogden, for plaintiffs and respondents.

HENRIOD, Justice:

Appeal from a judgment declaring a country road a "public highway" by public use for 10 years, under the provisions of Title 27–12–89, Utah Code Annotated 1953. Reversed. No costs awarded.

The complaint in this case is not bottomed on Title 27–12–89 and the judgment, in basing its conclusion thereon, departs from the plaintiff's theory and prayer for relief.

The complaint simply says that plaintiffs are owners and subdividers of a tract of land immediately east of the Combe land, that the access road running through it "has been dedicated as a public street by Weber County," has been "established by grants and reservations in the defendants' property beginning in 1907, and is the only access road for all of the property owners residing in this area"; that plaintiffs are trying to sell lots and "defendants have attempted to stop them, prospective buyers, and the public from using said road by the erection of signs and placing other ob-structions across said road," that plaintiffs' have lost customers because of such acts, that plaintiffs have requested Combes to desist and have met with repeated refusals, to the formers' damage. The prayer is for a restraining order, for damages and for general relief.

There is nothing in the complaint alleging that this country road intentionally was dedicated as a "public *thoroughfare*" (not "public *highway*," as the trial court held it to be). There is nothing therein alleging that the public has used it continuously for 10 years, as the statute requires, and there is but a remote suggestion therein that Weber County *dedicated* it as such,— which Weber County cannot do except through condemnation proceedings or conveyance by itself as owner thereof.[1] Furthermore it was not alleged that any member or members of the general public used the road, save the property owners in this area.[2] Such property owners cannot be considered members of the public generally, as that term generally is used in dedication by user statutes.[3] Irrespective of the departure from theory or proof, we think the burden of proving a real public use con-

---

1. It turned out the alleged "dedication" by Weber County was only a "resolution" signed by the county commissioners, that said they dedicated the road which was but a gratuity indulged without any legal efficacy whatever, and no evidence of dedication by user.

2. All of whom deraigned title from Michael Combe, under documents of conveyance from the latter, where in some instances an easement over the road specifically was reserved.

3. The complaint itself is evidence militating against the notion of dedication, or an intent to dedicate, since it accused the defendants of open acts of protest and obstruction that are hostile to such notion.

tinuously for 10 years was not met here in the light of principles to the effect that dedication of rights to the public generally, must be displayed by clear and convincing evidence.[4] This we say even in view of the other principle that on review we canvass the facts in a light more favorable to the conclusions of the arbiter of the facts. These principles clash somewhat, but where individual property rights are at stake we must not treat such rights lightly.[5]

In this case it is true, as this voluminous record reflects, that there was considerable controversion as to some facts to which witnesses testified. However, we think such disagreement went to many facts not germane to a determination of the hard core of this litigation: Was there sufficient evidence by competent testimony, by witnesses who were not self-serving, to show by clear and convincing evidence, that the public generally,—not just a few having their own special and private interests in the road, had used the road continuously for 10 years? We think there was not such quantity or quality of proof adduced. Furthermore, we believe the testimony of plaintiffs' own witnesses defeated the plaintiffs' cause on the simple principle that the testimony of one's own witness is no stronger than its weakest link.

Around the turn of the century, Michael Combe homesteaded the land over which the road, subject of this litigation, was created in a wilderness, sort of an integral part of a forest primeval. By a series of mesne conveyances he divided the tract to his successor kinfolk and others, but there is no question about the fact that the road originally traversed Michael's land, and any interest therein, by such conveyances, became the property of his transferees, and the latters' transferees. It must also be conceded that this admitted private road terminated at a dead end at the east end of the Combe domain, where beyond there was nothing but rocks, oakbrush and no attempt to build a road.

The plaintiffs examined the tract east of the dead-end road, and without any apparent effort to check any rights, or to consult with the Combes or anyone else, bought the land and started building homes thereon,—not to live thereon personally but to sell them at an anticipated profit, to 71 prospective purchasers, assuming, apparently, that the road was available for use. At this point the Combes protested this incursion, and took steps to prevent it. The Petersens then filed their complaint, mentioned above, to have this country road declared a public highway by dedication. The Combes claimed in their answer and testimony that they resisted any efforts on the part of unauthorized persons to use what erstwhile was conceded to have been a private road.

---

4. See cases in Pac.Dig., ☞ No. 41, Dedication.

5. Bonner v. Sudbury, 18 Utah 2d 140, 417 P.2d 646 (1966).

They produced substantial competent, believable evidence of having posted warning signs to substantiate their contention, no one seriously disputing such circumstances, mute evidence of which was a photograph of a warning sign posted at or near the entry to the claimed private road. Without the Combe evidence and testimony, we think this case determinable by the plaintiffs' own evidence and testimony. Abstracted, here it is:

Plaintiffs called numerous witnesses, most of whom were either property owners abutting or straddling the road in question, having deraigned title directly or indirectly from homesteader, Michael Combe. Thus they were not a part of the general public, but were interested persons entitled individually to use the road personally in virtue of their documentary title, and they or their personal visitors cannot be numbered in the class of members of the general public using such road in a fashion that might ripen into a dedication of a road under the statute. They, of course, could testify as to what others not so situate might have done to perfect a dedication, including, if they could prove it, daily Greyhound Lines passengers who may have desired to view the rather Godforsaken rocks and sagebrush beyond the cul-de-sac at which father Michael's road through his property came to a screeching halt.

It was conceded that this road never was formally dedicated. In this respect, the plaintiffs seem to be somewhat inconsistent in introducing a so-called "Resolution" of the Weber County Commission, as being a formal dedication,— since such resolution obviously was an abortion and no evidence of dedication whatsoever, since it did not presume to represent any kind of condemnation or sale. Any other conclusion would condone by "Resolution" the establishment of a public highway and an ingress into and egress out of the Weber Club premises and its parking lot. The same reasoning applies to the exhibit of the County Surveyor's office that "considered" this road to be a public way; and to aerial maps, and to other charts and maps that indulge in the same type of conjecture and prestidigitation.

Plaintiffs' own witnesses said: That the property beyond this cul-de-sac was rocky, oakbrushed, and had no allure for the public. Mrs. Anna Martinet, who had a personal and titled right to use the road, stated she had seen the posted warning signs, which was confirmed by Mrs. Bertha Martinet, who had property rights to or on the road, by deed. Another of plaintiffs' own witnesses, Hansaker, having property interests east of Combes, saw the warning signs for an undisclosed period of time, and confirmed public non-allurance to the area, as had Anna Martinet, saying it was "good-for-nothing mountain land." Another of plaintiffs' witnesses, one Benning, who lived beyond the dead-end road, said he

knew of the "no-trespassing" signs, and asked the Combes' permission to use the road; that he considered the Combes owned a private road; that he knew of no one using the road except the property owners adjacent thereto, and that there was nothing of public interest along the road. Plaintiffs' witness Burton knew of the warning signs for at least two or three years and that they were old and rusty, and that there was nothing of public interest that would encourage use of the road. Even one of the plaintiffs acknowledged seeing the signs and conceded that one of the defendants stopped him. All of these witnesses were plaintiffs' witnesses,—*not* defendants'.

■ There were certain agencies of government called by plaintiffs such as the Weber Basin Water Conservancy District, whose agent testified the District used the road to reach its reservoir; the Telephone Company to serve its facilities; the Fish and Game Department to control game; and the Forest Service to service the uplands,—but the record indicates that such uses were with permission of the Combes. The plaintiffs' evidence also was that Weber County equipment graded and maintained the road off and on, but the uncontroverted evidence was to the effect that it was in exchange for the County's taking gravel from Combes' properties,—such circumstances hardly being a factor to show public use.

■ We think the procedure and facts of this case are pretty much controlled by the following cases: Morris v. Blunt, 49 Utah 243, 161 P. 1127 (1916); Hall v. No. Ogden City, 109 Utah 325, 175 P.2d 703 (1946); Thompson v. Nelson, 2 Utah 2d 340, 273 P.2d 720 (1954); Gillmor v. Carter, 15 Utah 2d 280, 391 P.2d 426 (1964); and by the fact that plaintiffs, by their own witnesses and evidence, actually supported the defendants' contentions that the taking of the property must be proved by clear and convincing evidence that constitutionally must be justified, and that the burden of proof to justify such conclusion has not been borne here.

It appears to us that someone legally must condemn this road, for public use, and that in doing so, the owners thereof must show real and not shakedown or emotional damages. It also seems to us that the plaintiffs, no doubt honorably, but without the desired optimum of discretion, did not check their rights to use an obvious rural road before plunging into the expensive project undertaken. We think, too, that this case would better have been avoided by a bit of negotiation before such plunge. We think, too, that the Combes may have responded differently had they been consulted before someone touched a sensitive nerve by crossing over the drawbridge to their revered castle, as it were.

CALLISTER, TUCKETT and EL-LETT, JJ., concur.

CROCKETT, Chief Justice (dissenting).

The main opinion's commendably candid exposition of the facts makes it unnecessary for me to say anything more about them. My disagreement with my colleagues is in the conclusion to be drawn therefrom. To avoid misunderstanding, I desire to voice my agreement with the following ideas relating to the solidarity of land titles:

The ownership of property as evidenced by duly recorded written documents should be granted a high degree of sanctity and respect. Such ownership should neither be taken nor eroded away by stealth or inadvertence in the use or encroachment thereon by others.

In order for others to acquire rights therein, the adverse use must be done in such a way that the owner knows or should know the right to use his property is being asserted against him. The proof of these facts must be by clear and convincing evidence.

Nevertheless, it is the prerogative of the trial judge to determine whether the tests above stated have been met; and this includes whether the evidence is clear and convincing. See Greener v. Greener, 116 Utah 571, 212 P.2d 194; Child v. Child, 8 Utah 2d 261, 332 P.2d 981. The fact that a witness may have an interest may discount his testimony if so regarded by the judge, but it does not discredit his testimony ipso facto. See Chugg v. Chugg, 9 Utah 2d 256, 342 P.2d 875; Page v. Fed. Security Ins. Co., 8 Utah 2d 226, 332 P.2d 666.

When the facts of this case are surveyed in the light of the traditional rules of review: favorable to the findings of the trial court; and if when so viewed, there is a sufficient basis in the evidence upon which reasonable minds might conclude as he did, the judgment should not be overturned, I am not persuaded that it should be done here.